1   THOMAS M. MCINERNEY, CA BAR NO. 162055
    THELEN REID BROWN RAYSMAN & STEINER LLP
2   101 Second Street, Suite 1800
    San Francisco, CA  94105-3606
3   Tel. 415.371.1200
    Fax 415.371.1211
4
    Attorneys for Defendants
5   BECHTEL CORPORATION and
    BECHTEL CONSTRUCTION COMPANY
6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

11
    JAMES RICHARD STIEFEL,                  Case No.: 08 CV 0037 H (WMc)
12
                     Plaintiff,             DEFENDANTS' REQUEST FOR
13                                          JUDICIAL NOTICE RELATED TO
            vs.                             THEIR MOTION TO DISMISS AND/OR
14                                          TO STRIKE
    BECHTEL CORPORATION and BECHTEL         (Fed. R. Civ. Proc. 12(b)(1), 12(b)(6), 12(f))
15  CONSTRUCTION COMPANY,
                                            Date:  February 11, 2008
16                   Defendants.            Time:  10:30 a.m.
                                            Judge:  Honorable Marilyn L. Huff
17                                          Courtroom 13, 5th Floor

18

19

20

21

22

23

24

25

26

27

28
    SF #1392975 v1

I, Thomas M. McInerney, declare as follows:

1.      I am an attorney duly licensed by the State Bar of California and am authorized to practice law in California and the U.S. District Court for the Southern District of California. I am a partner with Thelen Reid Brown Raysman & Steiner, counsel of record for defendant Bechtel Corporation.

2.      Attached at Exhibit A is a copy of Stiefel's original complaint on file with this Court in case number 06 CV 1414 H (WMc). Bechtel requests that the Court take judicial notice of this complaint pursuant to Federal Rule of Evidence 201(d).

3.      Attached at Exhibit B is a copy of Stiefel's Department of Fair Employment and Housing ("DFEH") charge of discrimination and "right-to-sue" notice. These documents were attached to Stiefel's original complaint and are on file with this Court in case number 06 CV 1414 H (WMc). Bechtel requests that the Court take judicial notice of this complaint pursuant to Federal Rule of Evidence 201(d).

4.      Attached at Exhibit C is a copy of this Court's April 10, 2007 order in case number 06 CV 1414 H (WMc). Bechtel requests that the Court take judicial notice of this complaint pursuant to Federal Rule of Evidence 201(d).

5.      Attached at Exhibit D is a copy of this Court's July 13, 2007 order in case number 06 CV 1414 H (WMc). Bechtel requests that the Court take judicial notice of this complaint pursuant to Federal Rule of Evidence 201(d).

6.      Attached at Exhibit E is a copy of Stiefel's complaint in this action, which was recently removed to this Court. Bechtel requests that the Court take judicial notice of this complaint pursuant to Federal Rule of Evidence 201(d).

7.      Attached at Exhibit F is a copy of Stiefel's EEOC charge and EEOC "Notice of Case Closure" which he attached to his most recent complaint. Bechtel requests that the Court take judicial notice of this complaint pursuant to Federal Rule of Evidence 201(d).

//

//

//

1       I declare under penalty of perjury pursuant to the laws of the State of California and the

2 United States that the foregoing is true and correct and is executed this 14th day of January, 2007,

3 at San Francisco, California.

4

5                          s/ Thomas M. McInerney
                              Thomas M. McInerney

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

DEFENDANTS' REQUEST FOR JUDICIAL NOTICE RELATED TO THEIR MOTION TO DISMISS AND/OR TO STRIKE
(Fed. R. Civ. Proc. 12(b)(1), 12(b)(6), 12(e))

# EXHIBIT A

1 | **DANZ & GERBER**
STEPHEN F. DANZ SBN 68318
2 | 13418 VENTURA BOULEVARD
SHERMAN OAKS, CA. 91423
3 | TEL: (818) 783-7300 FAX: (818) 995-7159

2005 JUN 21  AM 8:33

4
**DANZ & GERBER**
5 | MARCUS JACKSON SBN 205792
1550 HOTEL CIRCLE NORTH, SUITE 170
6 | SAN DIEGO, CA. 92108
TEL: (619) 297-9400 FAX: (619) 297-9444
7
8 | Attorneys for Plaintiff JAMES RICHARD STIEFEL
9

10 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
11 | **FOR THE COUNTY OF SAN DIEGO**
12 | **NORTH COUNTY DIVISION**
13

14 | JAMES RICHARD STIEFEL, an individual; | CASE NO.: **GIN U 5 3 4 6 1**

15 | Plaintiff, | COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF BASED UPON:

16 | v.

1.) WRONGFUL TERMINATION IN
17 | BECHTEL CORPORATION, a Corporation; | VIOLATION OF PUBLIC POLICY;
and DOES 1 through 100, INCLUSIVE, | 2.) FAILURE TO ACCOMMODATE
18 | DISABILITY (FEHA);
Defendants. | 3.) RETALIATION (FEHA);
19 | 4.) VIOLATION OF CALIFORNIA LABOR
CODE;
20 | 5.) NEGLIGENT SUPERVISION/NEGLIGENT
RETENTION; AND,
21 | 6.) INTENTIONAL INFLICTION OF
EMOTIONAL DISTRESS.
22

23 | **DEMAND FOR JURY TRIAL**

24
Plaintiff, JAMES RICHARD STIEFEL (hereinafter referred to as "MR. STIEFEL" or
25
"Plaintiff"), upon information and belief, alleges the following. This action is brought by Plaintiff
26
on his own behalf regarding, *inter alia*, wrongful termination, failure to accommodate, retaliation,
27
negligent supervision and intentional infliction of emotional distress claims arising from his
28
employment by Defendants.

1.

COMPLAINT

1 | **DANZ & GERBER**
STEPHEN F. DANZ SBN 68318
2 | 13418 VENTURA BOULEVARD
SHERMAN OAKS, CA. 91423
3 | TEL: (818) 783-7300 FAX: (818) 995-7159

4
**DANZ & GERBER**
5 | MARCUS JACKSON SBN 205792
1550 HOTEL CIRCLE NORTH, SUITE 170
6 | SAN DIEGO, CA. 92108
TEL: (619) 297-9400 FAX: (619) 297-9444

7

8 | Attorneys for Plaintiff JAMES RICHARD STIEFEL

9

10 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11 | **FOR THE COUNTY OF SAN DIEGO**

12 | **NORTH COUNTY DIVISION**

13

14 | JAMES RICHARD STIEFEL, an individual;   CASE NO.:

15 | Plaintiff,   COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF BASED UPON:
16 | v.
   1.) **WRONGFUL TERMINATION IN**
17 | BECHTEL CORPORATION, a Corporation;   **VIOLATION OF PUBLIC POLICY;**
and DOES 1 through 100, INCLUSIVE,   2.) **FAILURE TO ACCOMMODATE**
18 |    **DISABILITY (FEHA);**
   Defendants.   3.) **RETALIATION (FEHA);**
19 |    4.) **VIOLATION OF CALIFORNIA LABOR**
   **CODE;**
20 |    5.) **NEGLIGENT SUPERVISION/NEGLIGENT**
   **RETENTION; AND,**
21 |    6.) **INTENTIONAL INFLICTION OF**
   **EMOTIONAL DISTRESS.**
22
   **DEMAND FOR JURY TRIAL**
23

24 |       Plaintiff, JAMES RICHARD STIEFEL (hereinafter referred to as "MR. STIEFEL" or

25 | "Plaintiff"), upon information and belief, alleges the following.  This action is brought by Plaintiff

26 | on his own behalf regarding, *inter alia*, wrongful termination, failure to accommodate, retaliation,

27 | negligent supervision and intentional infliction of emotional distress claims arising from his

28 | employment by Defendants.

1.

COMPLAINT

## JURISDICTION AND VENUE

1.     This Court has jurisdiction because at all relevant times herein Plaintiff resided in this County, BECHTEL CORPORATION is located in this County and does business in this County and all events constituting the conduct set forth in this Complaint occurred in this County of San Diego.

2.     Venue is proper in this Court under California Code of Civil Procedure Section 395 because the wrongful conduct alleged herein occurred in this County, the records relevant to Defendants' business are maintained in this County and all of the parties reside in, are located in, or operate in this County.  Moreover, venue is proper within this Division because Plaintiff and Defendants reside/resided in, are located in, or operate in this Division and the events described below occurred in this Division.

## PARTIES

3.     Plaintiff MR. STIEFEL is and was at all relevant times herein an adult resident of San Diego County.

4.     Defendant BECHTEL CORPORATION ("BECHTEL") is and was at all relevant times herein a corporation, with its principal place of business in California, doing business in San Diego County.  BECHTEL was at all times relevant herein a subcontractor of SOUTHERN CALIFORNIA EDISON ("SCE") working on various projects at the San Onofre Nuclear Generating Station ("SONGS").

5.     Plaintiff is unaware of the true identities of the Defendants, whether individual, corporate, associate or otherwise, sued herein as Does 1 through 100 inclusive.  Therefore Plaintiff sues them by such fictitious names pursuant to California Code of Civil Procedure Section 474.  Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants was responsible at least in part for the occurrences alleged herein and is therefore liable to Plaintiff for the damages caused thereby.  Plaintiff reserves the right and will seek leave to amend this Complaint to substitute their true identities once these have been ascertained.  To the extent the conduct below was perpetrated by certain Defendants, the named Defendant or Defendants confirmed and ratified the same.

2.

COMPLAINT

6.     Plaintiff is informed and believes and, on that basis alleges, that at all times herein mentioned, each Defendant was the agent, principal and/or employee of each other Defendant in the acts and conduct alleged herein and therefore incurred liability to Plaintiff or the acts alleged below. Plaintiff is further informed and believes and, on that basis, alleges that at all times herein mentioned, all the Defendants were acting within the course and scope of their employment and/or said agency.

## GENERAL BACKGROUND FACTS

7.     MR. STIEFEL began his employment at BECHTEL on or about May 1, 2004 as an ironworker in the facilities department of SONGS. He worked in that capacity for approximately one and a half years until BECHTEL transferred him to another area.

8.     BECHTEL moved MR. STIEFEL to the Unit 1 decommissioning project on or about November 2005.

9.     During November 2005 while MR. STIEFEL was employed with the Unit 1 decommissioning project at SONGS, there was an incident with the boom lift. He and another worker were stuck ninety feet in the air on the boom lift as numerous workers on the ground had trouble operating the controls on the lift. Numerous workers continued to endanger them by manipulating the controls, at one point causing the front wheels to rise six inches off the ground.

10.     MR. STIEFEL radioed to the workers below to stop manipulating the controls as directed by the safety precautions of the lift manual. The proper procedure is to call a vendor to come to aid in such an emergency situation.

11.     The local fire department arrived to assist with the emergency caused by the boom lift malfunction. They intended to rescue MR. STIEFEL and the other worker from the boom lift, but BECHTEL supervisors including JIM CARROLL and the safety representative HECTOR TELLEZ refused to let the fire department get involved. They insisted on handling the emergency without assistance from the local fire department.

12.     As a result, MR. STIEFEL and the other employee were stuck on the lift for more than three hours imperiled further by the haphazard manipulation of the controls by the employees.

3.

COMPLAINT

13.    BECHTEL personnel interviewed MR. STIEFEL concerning the emergency boom lift malfunction. MR. STIEFEL duly reported the names of people involved, including those on the ground manipulating controls and those refusing assistance from the fire department.

14.    BECHTEL supervisor JIM CARROLL learned that MR. STIEFEL duly reported the emergency boom lift malfunction, including the fact that he mentioned JIM CARROLL's involvement. JIM CARROLL refused to acknowledge or speak to MR. STIEFEL for a period after that time and demonstrated animosity toward MR. STIEFEL.

15.    In December 2005, MR. STIEFEL's crew was fabricating and preparing to install a system to remove radioactive material in the containment building, which housed the reactor. He found a cracked weld and brought it to JIM CARROLL's attention. A subsequent inspection determined that up to ninety-five percent of the welds were bad. The resulting repairs delayed the project for five months. JIM CARROLL made a point of criticizing MR. STIEFEL for reporting the cracked weld. He made comments such as, "Richard why did you have to open your damn mouth?" and, "You shouldn't have said anything about it."

16.    On or about January 31, 2006, MR. STIEFEL was working when he got his hand wedged in a piece of equipment. He had been directed to use a specific tool by his foreman, despite the fact it was not the proper tool to safely perform the task.

17.    During that incident on or about January 31, 2006, MR. STIEFEL suffered an injury to his left thumb which turned out to be a torn tendon. Dr. Earl Miller, a BECHTEL worker's compensation doctor treated MR. STIEFEL. He placed his thumb in a splint and scheduled a follow up appointment on February 3, 2006 at 10:00 am. MR. STIEFEL arranged transportation to the appointment with BECHTEL safety officers pursuant to long-standing rules prohibiting him from operating his own vehicle on company time while injured. In fact, no safety officer provided any transportation to MR. STIEFEL causing him to miss his appointment with Dr. Miller.

18.    On the evening of February 3, 2006, a BECHTEL insurance carrier telephoned MR. STIEFEL to inquire as to the reason for missing the appointment. MR. STIEFEL explained that BECHTEL should transport him to the appointment pursuant to long-standing procedures and the risk of driving with an injured hand. This issue became a point of contention with BECHTEL.

4.

COMPLAINT

19.    On February 7, 2006, MR. STIEFEL saw DR. EARL MILLER once again. He examined his thumb and replaced it in a splint. He set up an orthopedic appointment and released MR. STIEFEL without properly diagnosing or treating the injury. Dr. EARL MILLER advised that MR. STIEFEL was fit to perform full time regular duties with no restrictions. In fact, MR. STIEFEL had suffered a work related torn tendon and torn ligament in this thumb, which required complete immobilization and restrictions on his job duties.

20.    Notwithstanding the foregoing, MR. STIEFEL returned to work as instructed by DR. EARL MILLER. He spoke to BECHTEL Jobsite Superintendent MIKE RODRIGUEZ and showed him the paperwork from the doctor and the insurance carrier. MR. STIEFEL expressed his concern that he could not perform normal duties given the injury to his thumb.

21.    On February 8, 2006, MR. STIEFEL returned to his work area. He then met with SCE employee DAN STEMPLE, and SCE supervisor JOHN PATTERSON who is in charge of the Unit 1 decommission. JOHN PATTERSON indicated he wanted the Edison safety department to review the circumstances to assure proper procedure in light of MR. STIEFEL's injury.

22.    On February 9, 2006, MR. STIEFEL told JOHN PATTERSON he was extremely concerned that BECHTEL would retaliate against him because of JOHN PATTERSON's involvement. JOHN PATTERSON expressly stated, "Richard I'm telling you right now, they won't retaliate against you and they'd better not."

23.    Following the February 9, 2006 meeting with JOHN PATTERSON, JIM FORAL a BECHTEL employee spoke with MR. STIEFEL. He stated that BARRY CLARK, the site manager for BECHTEL had requested a meeting with JIM FORAL. "Jim you need to get your butt over to my office right now," he reportedly said. "We've got a trouble maker on the job," BARRY CLARK reportedly said according to JIM FORAL. Thereafter, JIM FORAL met with BARRY CLARK regarding MR. STIEFEL's injury.

24.    BECHTEL set up an appointment with an orthopedist for MR. STIEFEL after SCE's involvement. DR. GIALAMAS saw MR. STIEFEL on February 13, 2006. He determined that MR. STIEFEL had a torn tendon. He placed MR. STIEFEL's left hand into a cast. He released MR. STIEFEL to return to work, but only on light duty with no use of his left hand.

5.

COMPLAINT

1

25.    On February 14, 2006, MR. STIEFEL returned to work and attended the regularly scheduled safety meeting.  He handed his BECHTEL foreman DAVE SMITH  and the safety department representative HECTOR TELLEZ the note from DR. GIALAMAS indicating he was to work light duty with no use of the left hand.

26.    On February 14, 2006, MR. STIEFEL was assigned by BECHTEL work which complied with DR. GIALAMAS' instructions.  On February 16, 2006, however, MR. STIEFEL was assigned tasks by BECHTEL that required the use of both hands such as welding, cutting with a torch, grinding, fabricating, climbing ladders and using rope to lift objects.  At this time other members of his crew were assigned tasks that did not require the use of both hands.  MR. STIEFEL spent the next three weeks performing tasks assigned by BECHTEL which required the use of both hands even though other tasks were available that did not require the use of both hands.

27.    On February 16, 2006 and thereafter, BECHTEL intentionally punished MR. STIEFEL by assigning him tasks which required the use of both hands even though other tasks were available and it was both painful and dangerous for MR. STIEFEL to do so.  BECHTEL did so in retaliation for MR. STIEFEL having made efforts to be properly diagnosed and treated for his injuries and/or because of his prior complaints about unsafe working conditions.

28.    On or about March 6, 2006, BECHTEL laid off MR. STIEFEL.  BECHTEL characterized the action as a "medical reduction in force."  BECHTEL personnel informed him that his work had been satisfactory, but that he had angered BECHTEL superiors by involving SEC in his medical issues. He also was told that BECHTEL had assigned him onerous tasks since February 16, 2006 in order to compel him to quit.  MR. STIEFEL refused to do so consequently BECHTEL ultimately laid him off.

29.    MR. STIEFEL is informed and believes that BECHTEL characterized MR. STIEFEL as a "medical reduction in force" because it does not require BECHTEL to incur a "loss of time" injury according to BECHTEL's worker's compensation insurance carrier.  BECHTEL consequently saved money by laying off MR. STIEFEL as a "medical reduction in force," as opposed to a "loss of time" injury.

6.

COMPLAINT

30.     MR. STIEFEL has timely filed a charge of discrimination with the California Department of Fair Employment and Housing and received a right to sue letter.  *See* Exhibit A attached hereto.  Plaintiff has timely exhausted all administrative remedies.

**FIRST CAUSE OF ACTION:**
**WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**
[Against ALL DEFENDANTS and DOES 1 through 100, Inclusive.]

31.     Plaintiff repeats and realleges the allegations of paragraphs 1 through 30 above, and incorporates them herein by reference as though set forth in full.

32.     At all times mentioned herein, the California Labor Code and Government Code were in full force and effect, and Defendants were and are subject to their requirements.

33.     Under California law, no employee, whether they are an at-will employee, or an employee under a written or other employment contract, can be terminated for a reason that is in violation of a fundamental public policy

34.     Plaintiff is informed and believes, and based thereon alleges, that Defendants terminated his employment for reasons that violate the public policy of the State of California.  Said actions violate the following statutes that affect society at large:

a.     California Labor Code §98.6, which states:

"(a) No person shall discharge an employee or in any manner discriminate against any employee or applicant for employment because the employee or applicant engaged in any conduct delineated in this chapter, including the conduct described in subdivision (k) of Section 96, and Chapter 5 of Part 3 of Division 2, or because the employee or applicant for employment has filed a bona fide complaint or claim or instituted or caused to be instituted any proceeding under or relating to his or her rights, which are under the jurisdiction of the Labor Commissioner, or has testified or is about to testify in any such proceeding or because of the exercise by the employee or applicant for employment on behalf of himself, herself, or others of any rights afforded him or her.  (b) Any employee who is discharged, threatened with discharge, demoted, suspended, or in any other manner discriminated against in the terms and conditions of his or her employment because the employee engaged in any conduct delineated in this chapter, including the conduct described in subdivision (k) of Section 96, and Chapter 5 of Part 3 of Division 2, or because the employee has made a bona fide complaint or claim to the division pursuant to this part shall be entitled to reinstatement and reimbursement for lost wages and work benefits caused by such acts of the employer.  Any employer who willfully refuses to hire, promote, or otherwise restore an employee or former employee who has been determined to be eligible for such rehiring or promotion by a grievance procedure, arbitration or hearing authorized by law, is guilty of a misdemeanor...."

7.

COMPLAINT

b.     California Labor Code §§1102.5, which states:

"(a) An employer may not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.  (b) An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.  (c) An employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation."

c.     California Labor Code §132a, which prohibits any form of retaliation based on an employee's filing or attempting to file for worker's compensation benefits.

d.     California Labor Code §§6310, which reads in relevant part:

"(a) No person shall discharge or in any manner discriminate against any employee because the employee has done any of the following: (1) Made any oral or written complaint to the division, other governmental agencies having statutory responsibility for or assisting the division with reference to employee safety or health, his or her employer, or his or her representative...."

e.     California Labor Code § 6311, which provides in pertinent part:

"No employee shall be laid off or discharged for refusing to perform work in the performance of which this code, including Section 6400, any occupational safety or health standard or any safety order of the division or standards board will be violated, where the violation would create a real and apparent hazard to the employee or his or her fellow employees."

f.     California Labor Code §6402, which provides in part:

"No employer shall require, or permit any employee to go or be in any employment or place of employment which is not safe and healthful."

g.     California Labor Code §6403, which requires:

"No employer shall fail or neglect to do any of the following:
(a) To provide and use safety devices and safeguards reasonably adequate to render the employment and place of employment safe.
(b) To adopt and use methods and processes reasonably adequate to render the employment and place of employment safe.
(c) To do every other thing reasonably necessary to protect the life, safety, and health of employees."

h.     California Labor Code §6404, which states in relevant part:

"No employer shall occupy or maintain any place of employment that is not safe and healthful."

i.     California Government Code §§12940, et seq., which reads in relevant part:

8.

COMPLAINT

"It shall be an unlawful employment practice . . .

(a) For an employer, because of the race, religious creed, color, national origin, ancestry, *physical disability*, mental disability, *medical condition*, marital status, sex, age, or sexual orientation of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment.

. . . .

(j) (1) For an employer, labor organization, employment agency, apprenticeship training program or any training program leading to employment, or any other person, because of race, religious creed, color, national origin, ancestry, *physical disability*, mental disability, *medical condition*, marital status, sex, age, or sexual orientation, to harass an employee, an applicant, or a person providing services pursuant to a contract. Harassment of an employee, an applicant, or a person providing services pursuant to a contract by an employee, other than an agent or supervisor, shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action

. . . .

(m) For an employer or other entity covered by this part to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee.

j.      All other state and federal statutes, regulations, administrative orders, and ordinances, including but not limited to the California Code of Regulations, which effect society at large, and which discovery will reveal were violated by Defendants, including, but not limited to, the anti-retaliation regulations of the Nuclear Regulatory Commission, the Atomic Energy Act of 1954 and the Energy Reorganization Act of 1974.

35.     MR. STIEFEL's termination was in direct violation of the statutes cited above and DEFENDANTS own internal policies.

36.     MR. STIEFEL is entitled to redress in a private civil action for his extensive damages. Defendants violated articulated, fundamental public policies, affecting society at large, by violating the statutes described above.

37.     As a direct, foreseeable, and proximate result of the actions of Defendants as described above, Plaintiff has suffered, and continues to suffer, severe emotional distress, substantial losses in salary, bonuses, job benefits, and other employment benefits she would have received from Defendants, all to the Plaintiff's damage, in an amount unknown at this time but to be established at the time of trial.

9.

COMPLAINT

38.     Based on the grossly reckless and/or intentional, malicious, and bad faith manner in which Defendants conducted themselves as described herein, by willfully violating those statutes enumerated above, Plaintiff prays for punitive damages against Defendants in an amount to be determined at the time of trial, that is sufficiently high to punish Defendants, deter them from engaging in such conduct in the future, and to make an example of them to others.

39.     Plaintiff is informed and believes, and based thereon alleges, that the outrageous conduct of Defendants, described above, was done with oppression and malice and was ratified by the other individuals who were managing agents of those directly responsible. These unlawful acts were further ratified by the Defendant employers and done with a conscious disregard for Plaintiff's rights and with the intent, design and purpose of injuring him. By reason thereof, Plaintiff is entitled to punitive or exemplary damages against Defendants for their acts as described in this cause of action in a sum to be determined at the time of trial.

## SECOND CAUSE OF ACTION:
### FAILURE TO ACCOMMODATE DISABILITY IN VIOLATION OF THE FAIR EMPLOYMENT AND HOUSING ACT
(CALIFORNIA GOVERNMENT CODE §§12940 et seq.)
[Against all DEFENDANTS and DOES 1 through 100, Inclusive.]

40.     Plaintiff repeats and realleges paragraphs 1 through 39 above and incorporates them herein by reference as though set forth in full.

41.     MR. STIEFEL suffered injuries leaving him disabled, requiring medication and preventing him from performing his normal job duties without extreme difficulty and discomfort. The injury limited MR. STIEFEL's major life activities, including but not limited to working, thus qualifying as a disability under California law.

42.     BECHTEL is a qualifying employer under the California Government Code. DEFENDANTS violated California law requiring reasonable accommodation of disabilities by not permitting MR. STIEFEL to work light duty capacity during the period of his disability or even considering him for any other available position. DEFENDANTS violated case law as follows:

> "The essence of the concept of reasonable accommodation is that, in certain instances, employers must make special adjustments to their policies for individuals with disabilities." *McAlindin v. County of San Diego*, 192 F.3d 1226, 1236. "One variety of accommodation that may be required is job restructuring which can include "reassignment ot a vacant position, part-time or modified work schedules, acquisition or modification of equipment or devices, adjustment or modification of examinations, training materials or policies, the provisions of

10.

COMPLAINT

qualified readers or interpreters, and other similar actions." *Prillman v. United Air Lines, Inc.* 53 Cal. App. 4ᵗʰ 935, 947 (1997) (citing Cal. Code of Regs. Title 2, Section 7293.9(a).

43.    DEFENDANTS failed and refused to reassign, restructure, modify, adjust or make any of the required provisions or accommodations necessary for MR. STIEFEL under the circumstances.

44.    As a proximate result of Defendants' conduct, Plaintiff has lost salary, benefits and other employment-related benefits.

45.    As a further and proximate result of Defendants' conduct, Plaintiff has suffered embarrassment, humiliation, loss of self-esteem and anguish, all to Plaintiff's damage in an amount unknown at this time, but according to proof at the time of trial.

46.    As a further proximate result of the aforementioned wrongful conduct, Plaintiff has had to employ the services of attorneys to pursue his legal rights, to Plaintiff's damage, in an amount unknown at this time but according to proof at the time of trial.

47.    Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, in bad faith, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and/or in conscious disregard of Plaintiff's rights. Thus, Plaintiff is entitled to an award of exemplary and punitive damages according to proof at trial.

## THIRD CAUSE OF ACTION:
### RETALIATION IN VIOLATION OF THE FAIR EMPLOYMENT AND HOUSING ACT
(CALIFORNIA GOVERNMENT CODE §12940(h))
[Against All Defendants and DOES 1 through 100, Inclusive]

48.    Plaintiff repeats and realleges paragraphs 1 through 39 above and incorporates them herein by reference as though set forth in full.

49.    Plaintiff engaged in a protected activity under FEHA when he availed himself of rights protected under the Labor and Government Codes, including his complaints about safety problems at SONGS and the injury he personally suffered.

11.

COMPLAINT

50.    Defendants retaliated against Plaintiff for having complained of about the safety problems at SONGS and the injury he personally suffered which was initially overlooked by BECHTEL's doctor.

51.    The Defendants maintain internal policies that permit and encourage employees similarly situated to the Plaintiff to raise safety concerns and strictly prohibit any form of retaliation. This is especially appropriate in light of the extremely hazardous nature of the nuclear waste with which the parties are required to work.

52.    The Defendants retaliated against the Plaintiff by harassing, singling out, ostracizing, punishing and ultimately firing him as a direct result of his protected acts as expressly set forth above. The causal relationship between the Defendants' adverse action and MR. STIEFEL's protected activity in describing unsafe conduct and work conditions; and insisting on appropriate diagnosis, treatment and accommodation for the injuries he suffered may be inferred due to the short time between them. *See Fisher v. San Pedro Peninsula Hospital*, 214 Cal.App. 3d 590, 615 (1989).

53.    Such retaliation is in violation of the Fair Employment and Housing Act.

54.    As a proximate result of Defendants' conduct, Plaintiff has lost salary, benefits and other employment-related benefits.

55.    As a further and proximate result of Defendants' conduct, Plaintiff has suffered embarrassment, humiliation, loss of self-esteem and anguish, all to Plaintiff's damage in an amount unknown at this time, but according to proof at the time of trial.

56.    As a further proximate result of the aforementioned wrongful conduct, Plaintiff has had to employ the services of attorneys to pursue his legal rights, to Plaintiff's damage, in an amount unknown at this time but according to proof at the time of trial.

57.    Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, in bad faith, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and/or in conscious disregard of Plaintiff's rights. Thus, Plaintiff is entitled to an award of exemplary and punitive damages according to proof at trial.

///

12.

COMPLAINT

**FOURTH CAUSE OF ACTION:**
**VIOLATION OF THE CALIFORNIA LABOR CODE**
[Against ALL DEFENDANTS and DOES 1-100, Inclusive]

58.    Plaintiff realleges the information set forth in Paragraphs 1-57 above, and hereby incorporates these paragraphs as though fully set forth and alleged herein.

59.    By the conduct described above Defendants have violated California Labor Code §§ 98.6, 1102.5, 132a, 6310, 6311, 6402, 6403 and 6404 which prohibit, *inter alia*, unsafe working conditions and retaliation for an employee's exercising his or her rights under the Labor Code.

60.    As a direct and proximate result of the bad faith actions of Defendants, and each of them, Plaintiff has suffered damages due to these violations of California law and seek all damages allowed by law, according to proof at the time of trial.

**FIFTH CAUSE OF ACTION**
**NEGLIGENT SUPERVISION/NEGLIGENT RETENTION**
[Against All Defendants and DOES 1 through 100, Inclusive]

61.    Plaintiff realleges and incorporates the allegations of paragraphs 1 through 60 above as though set forth in full herein.

62.    The Defendants as employers owed a duty to the Plaintiff to supervise its managers closely in order to protect the rights of the Plaintiff as an employee.

63.    The Defendants breached this duty to the Plaintiff to supervise its managers closely by failing to protect the Plaintiff's rights to advise of unsafe work conditions and obtain proper treatment and accommodation following his injuries.

64.    Plaintiff is informed and believes and thereon alleges that in doing the acts as heretofore alleged, DEFENDANTS knew, or in the exercise of reasonable diligence should have known, that the employees responsible for the wrongful conduct alleged above, were operating Defendants' business in violation of the law and engaging in other wrongful, reprehensible and deceptive conduct, and that an undue risk to persons such as Plaintiff would exist because of the employment. Despite this advance knowledge, DEFENDANTS retained the employees responsible for the conduct detailed above, in conscious disregard of the rights and well being of others, including Plaintiff.

13.

65.     As a result of their conscious disregard of the rights of Plaintiff, Defendants are liable for the acts of their employees and agents, and each of them, for damages alleged herein, including punitive damages.

66.     As a proximate result of Defendants' unlawful conduct, Plaintiff has suffered loss of income, deferred income, bonuses and other employment-related benefits in an amount unknown at this time, but according to proof at the time of trial.

67.     As a further proximate result of the aforementioned wrongful conduct, Plaintiff has had to employ the services of attorneys to pursue his legal rights, to Plaintiffs' damage in an amount unknown at this time, but according to proof at trial.

68.     Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, in bad faith, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and/or in conscious disregard of Plaintiff's rights. Thus, he is entitled to an award of exemplary and punitive damages according to proof at the time of trial.

## SIXTH CAUSE OF ACTION:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
[Against ALL DEFENDANTS and DOES 1 through 100, Inclusive]

69.     Plaintiff realleges and incorporates the allegations of paragraphs 1 through 68 above as though set forth in full herein.

70.     Defendants' conduct, as thoroughly alleged above, was and is extreme and outrageous conduct amounting to intentional infliction of emotional distress, which was intended to and/or was done in conscious disregard of the probability of causing Plaintiff to suffer severe emotional distress.

71.     Defendants' outrageous conduct includes, *inter alia*, subjecting Plaintiff to an unsafe workplace, requiring the use of improper tools which directly resulted in his physical injury, subjecting him to a hostile work environment, and neglecting its obligation to prevent retaliation against Plaintiff because he lawfully exercised his right to complain about the foregoing.

72.     As a proximate result of Defendants' aforementioned wrongful conduct, Plaintiff has suffered and continues to suffer grave emotional distress, including embarrassment, humiliation,

14.

1 and anguish, all to his damage in an amount unknown at this time, but according to proof at the
2 time of trial.

3     73.     As a further proximate result of the aforementioned wrongful conduct, Plaintiff has
4 had to employ the services of attorneys to pursue his legal rights, to Plaintiff's damage in an
5 amount unknown at this time but according to proof at the time of trial.

6     74.     Defendants' conduct was willful, wanton, malicious, and with reckless disregard for
7 the rights of Plaintiff so as to justify an award of exemplary and punitive damages.

8

9     **WHEREFORE,** Plaintiffs pray for judgment as follows:

10     1.     For reinstatement of Plaintiff's lost wages and benefits;

11     2.     For a permanent injunction enjoining Defendants, their agents, successors and
12 employees from engaging in each unlawful practice set forth above, and for such other injunctive
13 relief as the Court may deem proper;

14     3.     For economic and special damages in an amount unknown at this time, but
15 according to proof at trial;

16     4.     For non-economic and general damages in an amount unknown at this time, but
17 according to proof at trial;

18     5.     For punitive damages as allowed by law, including California Civil Code §3294, and
19 according to proof at trial;

20     6.     For interest on overdue and unpaid wages pursuant to California Labor Code §218.6
21 at the prevailing legal rate.

22     7.     For civil penalties and fees as allowed by law.

23     8.     For pre-judgment interest at the prevailing legal rate;

24     9.     For reasonable attorneys' fees and costs, pursuant to California Labor Code Section
25 §218.5 and all other applicable statutes or provisions of law;

26     10.     For such other and further relief as this Court deems just and proper;

27     11.     For trial by jury for all issue so triable.

28

COMPLAINT

1    DATED: June 19, 2006

2                                              DANZ & GERBER

3                                        By:

4                                              STEPHEN F. DANZ, ESQ.
                                               MARCUS JACKSON, ESQ.
                                               Attorneys for Plaintiff
5                                              JAMES RICHARD STIEFEL

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16.

COMPLAINT

# EXHIBIT B

# * * * EMPLOYMENT * * *

**COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**

DFEH # E200506D-1580-00-PTC
*DFEH USE ONLY*

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

YOUR NAME (indicate Mr. or Ms.)  MR. James Richard Sriefel

TELEPHONE NUMBER (INCLUDE AREA CODE) (949) 201-8709

ADDRESS  33872 Orilla Rd. #C

CITY/STATE/ZIP  Dana Point Ca.     COUNTY Orange 92629-5541     COUNTY CODE

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

NAME  Bechtel Const. Co.     TELEPHONE NUMBER (Include Area Code)

ADDRESS  14300 Mesa Rd. # 648-A     DFEH USE ONLY

CITY/STATE/ZIP  San Clemente Ca. 92674     COUNTY Orange     COUNTY CODE

NO. OF EMPLOYEES/MEMBERS (if known)     DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month, day, and year)     RESPONDENT CODE

THE PARTICULARS ARE:

On 03-03-06  I was

- ___ fired
- _X_ laid off
- ___ demoted
- ___ harassed
- ___ genetic characteristics testing
- ___ forced to quit
- ___ denied employment
- ___ denied promotion
- _X_ denied transfer
- _X_ denied accommodation
- ___ impermissible non-job-related inquiry
- ___ other (specify)
- ___ denied family or medical leave
- ___ denied pregnancy leave
- ___ denied equal pay
- ___ denied right to wear pants
- ___ denied pregnancy accommodation

by  David Smith – Supervisor
Name of Person     Job Title (supervisor/manager/personnel director/etc.)

because of my:

- ___ sex
- ___ age
- ___ religion
- ___ race/color
- ___ national origin/ancestry
- ___ marital status
- ___ sexual orientation
- ___ association
- _X_ physical disability
- ___ mental disability
- ___ other (specify) Stepping outside chain of command
- ___ cancer
- ___ genetic characteristic
- (Circle one) filing: protesting/participating in investigation/retaliation for)

the reason given by  David Smith – Supervisor – I have a cast on my hand.
Name of Person and Job Title

Was because of [please state what you believe to be reason(s)]  I raised safety concerns - I was forced to use improper tools resulting in an injury to myself. I went outside the chain of command and was retaliated against.

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand that it is the Department's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated  04-10-06

At  Dana Point
City

J. Richard Sriefel
COMPLAINANT'S SIGNATURE

RECEIVED
APR 17 2006

SAN DIEGO
DISTRICT OFFICE
Legal Solutions Plus

DATE FILED:  4/17/06

DFEH-300-03 (01/05)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

STATE OF CALIFORNIA
LS-DFEH

STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES AGENCY

## DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

ARNOLD SCHWARZENEGGER, Governor

1350 Front Street, Suite 3005 San Diego, CA 92101
(619) 645-2681 TTY (800) 700-2320 Fax (619) 645-2683
www.dfeh.ca.gov



May 8, 2006

JAMES RICHARD STIEFEL
33872 Orilla Road, #C
Dana Point, CA 92629-5541

RE:    E200506D1580-00-prc
       STIEFEL/BECHTEL CONSTRUCTION COMPANY

Dear JAMES RICHARD STIEFEL:

### NOTICE OF CASE CLOSURE

This letter informs that the above-referenced complaint that was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective April 17, 2006 because an immediate right-to-sue notice was requested. DFEH will take no further action on the complaint.

This letter is also the Right-To-Sue Notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment Opportunity Commission (EEOC) must be visited to file a complaint within 30 days of receipt of this DFEH *Notice of Case Closure* or within 300 days of the alleged discriminatory act, whichever is earlier.

Notice of Case Closure
Page Two


The Department of Fair Employment and Housing does not retain case files beyond three years after a complaint is filed, unless the case is still open at the end of the three-year period.

Sincerely,

*Belinda Le Doux*

Belinda LeDoux
District Administrator


cc:    Case File


Director
Human Resources/Personnel
BECHTEL CONSTRUCTION COMPANY
14300 Mesa Rd. #6248-A
San Clemente, CA  92674

DFEH-200-43 (04/03)

**EXHIBIT C**

1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                  **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   JAMES RICHARD STIEFEL,                    CASE NO. 06-CV-01414-H
                                               (WMC)
12                          Plaintiff,

13          vs.
                                               ORDER GRANTING
14   BECHTEL CORPORATION and                   DEFENDANT'S MOTION TO
     DOES 1-100, inclusive,                    DISMISS
15
                            Defendants.
16

17          On July 13, 2006, defendant Bechtel Corporation ("Defendant") removed San

18   Diego County Superior Court case <u>Stiefel v. Bechtel</u>, case number GIN053461, to this

19   Court.   (Doc. No. 1.)   On December 27, 2006, plaintiff James Richard Stiefel

20   ("Plaintiff") filed a first amended complaint ("FAC"). (Doc. No. 21.) On January 11,

21   2007, Defendant filed a motion to dismiss Plaintiff's FAC. (Doc. No. 22.) On February

22   12, 2007, Plaintiff filed an opposition.   (Doc. No. 25.)   On February 16, 2007,

23   Defendant filed a reply. (Doc. No. 26.)

24          The Court held a hearing on Defendant's motion to dismiss on February 26,

25   2007. Attorney Marcus Jackson represented Plaintiff and attorney Thomas McInerney

26   represented Defendant at the hearing.   On February 27, 2007, the Court filed a

27   scheduling order regarding supplemental briefing. (Doc. No. 28.) On March 9, 2007,

28   Defendant filed a supplemental brief in support of its motion to dismiss. (Doc. No. 32.)

                                        - 1 -

1    On March 19, 2007, Plaintiff filed a supplemental opposition to Defendant's motion to

2    dismiss. (Doc. No. 34.) On March 21, 2007, Defendant filed a motion requesting the

3    Court take judicial notice of certain facts. (Doc. No. 35.) On March 28, 2007, Plaintiff

4    filed an opposition brief. (Doc. No. 37.)

5        For the following reasons, the Court **DISMISSES WITHOUT PREJUDICE**

6    Plaintiff's disability discrimination and retaliation claims to the extent that they are

7    based on the ADA (claims two and three). The Court **GRANTS WITH PREJUDICE**

8    Defendant's motion to dismiss Plaintiff's claims for wrongful termination in violation

9    of public policy (claim one), disability discrimination and retaliation to the extent that

10   they are based on the California Fair Employment Housing Act (claims two and three),

11   violations of sections 98.6, 1102.5, 132a, 6402, 6403, and 6404 of California's Labor

12   Code (claim four), negligent supervision (claim five), and intentional infliction of

13   emotional distress (claim six).  The Court **GRANTS WITHOUT PREJUDICE**

14   Defendant's motion to dismiss Plaintiff's disability discrimination claim under the

15   Rehabilitation Act (claim two), and Plaintiff's claims for violations of sections 6310

16   and 6311 of California's Labor Code.

17                              **Background**

18       Plaintiff began working for Defendant at the San Onofre Nuclear Generating

19   Station ("SONGS") as an ironworker in May 2004.[1] (FAC ¶ 7.)  Defendant performs

20   services at SONGS pursuant to a contract it has with Southern California Edison

21   ("SCE"). (Id. ¶ 4.) In November 2005, Plaintiff reported to personnel employed by

22   Defendant the names of people involved with an emergency boom lift malfunction. (Id.

23   ¶¶ 9-14.) In December 2005, Plaintiff brought to the attention of his supervisor a

24   cracked weld in a system designed to remove radioactive material from the containment

25   _____

26       [1] Defendant alleges that Plaintiff was employed by Bechtel Construction
     Company, a subsidiary of Defendant, and states that it is not waving its right to later
27   contest the fact that Plaintiff sued the wrong entity. (Def. Bechtel Corporation's Mem.
     P. & A. Supp. Mot. Dismiss, at 1 & n.1.) Since the Court must accept all well-pleaded
28   factual allegations as true for purposes of a motion to dismiss, the Court accepts that
     Plaintiff was employed by Defendant for purposes of this order.

1   building which housed the nuclear reactor. (Id. ¶ 15.) Plaintiff injured his left thumb

2   while working for Defendant on January 31, 2006. (Id. ¶¶ 16, 17.) Plaintiff was laid

3   off by Defendant in March 2006. (Id. ¶ 28.)

4        Subsequently, Plaintiff filed a charge of discrimination with the California

5   Department of Fair Employment and Housing. (Id. ¶ 31.) In June 2006, Plaintiff filed

6   a complaint in San Diego County Superior Court for wrongful termination in violation

7   of public policy, failure to accommodate a disability, retaliation, violations of

8   California's Labor Code, negligent supervision, and intentional infliction of emotional

9   distress. (Compl. ¶¶ 1-74.) Defendant removed the suit to federal court. (Notice

10  Removal, at 1-4.)

11       On December 13, 2006, the Court granted Plaintiff leave to amend his complaint.

12  (Doc. No. 19.) On December 27, 2006, Plaintiff filed a FAC alleging wrongful

13  termination in violation of public policy (claim one), disability discrimination under the

14  California Fair Employment Housing Act, section 12940 et seq. of the California Labor

15  Code ("FEHA"), the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.

16  ("ADA"), and the Rehabilitation Act, 29 U.S.C. § 701 et seq. (claim two), retaliation

17  under FEHA and the ADA (claim three), violations of California's Labor Code (claim

18  four), negligent supervision (claim five), and intentional infliction of emotional distress

19  (claim six). On January 11, 2007, Defendant filed a motion to dismiss Plaintiff's entire

20  suit. (Def. Bechtel Corporation's Notice Mot. and Mot. Dismiss, at 1.)

21       On February 26, 2007, the Court held a hearing on Defendant's motion to

22  dismiss. At the hearing, Plaintiff's attorney Marcus Jackson stated that he did not have

23  a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC")

24  regarding his ADA claims.

25                              **Discussion**

26  **A.   Judicial Notice**

27       Defendant requests the Court take judicial notice of the fact that SONGS is

28  located on a federal enclave. Plaintiff states that he does not oppose Defendant's

1  request because the evidence Defendant submitted demonstrates that the Court may

2  properly take judicial notice that SONGS is a federal enclave.

3      A matter that is properly the subject of judicial notice may be considered along

4  with the complaint when deciding a motion to dismiss for failure to state a claim.  See

5  MGIC Indem. Corp. v. Weisman, 803 F2d 500, 504  (9th Cir. 1986).  Judicial notice

6  may be taken of facts not subject to reasonable dispute in that they are "generally

7  known" in the community or "capable of accurate and ready determination by reference

8  to sources whose accuracy cannot be reasonably questioned."   See Fed. R. Evid.

9  201(b).

10      In 1939, California consented to allow the United States to acquire by purchase

11  or condemnation any track of land within the state for the purpose of erecting forts or

12  other needful buildings.  See Cal. Stats. 1939, ch. 710, § 1, p. 2231 (Decl. Thomas M.

13  McInerney Supp. Def.'s Mot. Req. Judicial Notice, Ex. D).  In 1942, the United States

14  acquired Camp Pendleton through condemnation.  See Law Enforcement at San Onofre

15  Nuclear Generation Plant, 1 Op. Off. Legal Counsel 204, 204-05 (1977); see also Letter

16  from James Forrestal, Under Secretary of the Navy, to Earl Warren, California

17  Governor (Sept. 8, 1943) (on file in Official Recorder's Office of San Diego County,

18  California) (Decl. Thomas M. McInerney Supp. Def.'s Mot. Req. Judicial Notice, Ex.

19  E) ("The United States of America became vested with valid title to certain lands in San

20  Diego County, California on December 31, 1942 . . . . [F]or the establishment of Camp

21  Joseph H. Pendleton . . . .").

22      In 1963, Congress authorized the Secretary of the Navy to grant an easement

23  allowing Southern California Edison Company and San Diego Gas and Electric

24  Company to construct, operate, and maintain a nuclear electric generating station in

25  Camp Pendleton Naval Reservation.  See Act of July 30, 1963, Pub. L. No. 88-82, 77

26  Stat. 115.  The U.S. Department of Justice has confirmed that SONGS is the nuclear

27  generating plant authorized by Congress.  See Law Enforcement at San Onofre Nuclear

28  Generation Plant, supra, 1 Op. Off. Legal Counsel at 204-05 ("Camp Pendleton was

1 | acquired by the United States in 1942 through condemnation. Jurisdiction over the land
2 | was ceded by the State of California and accepted by the Secretary of the Navy on
3 | behalf of the United States. Thus, Camp Pendleton is within the exclusive territorial
4 | jurisdiction of the United States . . . . The San Onofre power plant is located within the
5 | reservation on a 60-year easement granted by the Navy Department in 1964 pursuant
6 | to Pub. L. 88-82, 77 Stat. 115.") (internal citations omitted); see also Cooper v.
7 | Southern California Edison Co., 170 Fed. Appx. 496, 497 (9th Cir. 2006)[2] ("SONGS
8 | is located within a federal enclave, acquired by the United States in 1941 when it
9 | established Camp Pendleton.") (citing United States v. Fallbrook Pub. Util. Dist., 110
10 | F. Supp. 767, 771 (S.D. Cal. 1953)); Snow v. Bechtel Const. Inc., 647 F. Supp. 1514,
11 | 1515-16 (C.D. Cal. 1986) (taking judicial notice of the fact that SONGS is located
12 | within a federal enclave).

13 | Furthermore, it is generally known in the community that Camp Pendleton is a
14 | United States Marine Corp Base under the jurisdiction of the federal government.
15 | Accordingly, the Court takes judicial notice of the fact that SONGS is located within
16 | the federal enclave of Camp Pendleton, which was acquired by the United States no
17 | later than December 31, 1942.

18 | **B.    Legal Standards For A Motion To Dismiss**

19 | Defendant has moved to dismiss Plaintiff's entire suit against it under Rule
20 | 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which
21 | relief can be granted. A motion to dismiss for failure to state a claim pursuant to section
22 | 12(b)(6) tests the legal sufficiency of the claims in the complaint. See Conley v. Gibson,
23 | 355 U.S. 41, 45-46 (1957). Rule 12(b)(6) permits dismissal of a claim either where that
24 | claim lacks a cognizable legal theory, or where insufficient facts are alleged to support
25 | plaintiff's theory. See Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir.
26 | 1990). In considering the sufficiency of a complaint under Rule 12(b)(6), courts cannot

27 |

28 | [2] Unpublished decisions of the ninth circuit issued before January 1, 2007 may be cited by courts in the ninth circuit for factual purposes. See Ninth Circuit Rule 36-3(c)(ii).

1    grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove

2    no set of facts in support of his claim which would entitle him to relief." <u>Id.</u> (citing

3    <u>Conley v. Gibson</u>, 355 U.S. 41, 45–46 (1957)). In resolving a Rule 12(b)(6) motion, the

4    court must: (1) construe the complaint in the light most favorable to the plaintiff; (2)

5    accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff

6    can prove any set of facts to support a claim that would merit relief. <u>See</u> <u>Cahill v.</u>

7    <u>Liberty Mut. Ins. Co.</u>, 80 F.3d 336, 337–338 (9th Cir. 1996).

8       Dismissal is proper, however, if a complaint is vague, conclusory, and fails to set

9    forth any material facts in support of the allegation. <u>See</u> <u>North Star Intern. v. Arizona</u>

10   <u>Corp. Com'n</u>, 720 F.2d 578, 583 (9th Cir. 1983). Furthermore, a court may not "supply

11   essential elements of the claim that were not initially pled." <u>Ivey v. Bd. of Regents of</u>

12   <u>the Univ. of Alaska</u>, 673 F.2d 266, 268 (9th Cir. 1982). If a complaint is found to fail

13   to state a claim, the court should grant leave to amend unless it determines that the

14   pleading could not possibly be cured by the allegation of other facts. <u>See</u> <u>Doe v. United</u>

15   <u>States</u>, 58 F.3d 494, 497 (9th Cir. 1995).

16       As a general matter, a court may only consider the pleadings and judicially

17   noticed facts in deciding a 12(b)(6) motion. <u>See</u> <u>Hal Roach Studios, Inc. v. Richard</u>

18   <u>Feiner & Co.</u>, 896 F.2d 1542, 1555 (9th Cir. 1990). Material that is properly attached

19   to the complaint may properly be considered for purposes of a motion to dismiss

20   without converting the motion into one for summary judgment. <u>See</u> <u>id.</u> at 1555 n.19.

21   Also, a court may consider documents whose contents are alleged in a complaint and

22   whose authenticity no party questions, but which are not physically attached to the

23   plaintiff's pleading. <u>See</u> <u>Knievel v. ESPN</u>, 393 F.3d 1068, 1076 (9th Cir. 2005). This

24   doctrine extends to situations in which the plaintiff's claim depends on the contents of

25   a document and the defendant attaches the document to its motion to dismiss, even

26   though the plaintiff does not explicitly allege the contents of that document in the

27   complaint. <u>See</u> <u>id.</u>

28   / / /

06cv1414

**C.    ADA Claims**

Plaintiff stated at oral argument, and again in his supplemental briefing, that he does not have a right-to-sue letter from the EEOC regarding his ADA claims. "An individual plaintiff must first file a timely EEOC complaint against the allegedly discriminatory party before bringing an ADA suit in federal court." Josephs v. Pacific Bell, 443 F.3d 1050, 1061 (9th Cir. 2006). The ADA incorporates the "powers, remedies, and procedures" of Title VII of the Civil Rights Act of 1964, including the requirement that a "right-to-sue" letter be obtained before a plaintiff brings an ADA suit. See 42 U.S.C. §§ 12117(a), 2000e-5(f)(1); see also Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 626 (affirming dismissal of Title VII suit based on failure to obtain right-to-sue letter). Accordingly, the Court dismisses without prejudice Plaintiff's disability discrimination and retaliation claims to the extent that they are based on the ADA.

**D.    Rehabilitation Act Claims**

Plaintiff's second cause of action alleges disability discrimination under the Rehabilitation Act, 29 U.S.C. § 701 et seq. (FAC ¶¶ 41-48.) Defendant argues that section 503 of the Rehabilitation Act, 29 U.S.C. § 793, entails no private right of action. Plaintiff concedes that there is no private right of action under section 503.

Defendant also argues that section 504 of the Rehabilitation Act, 29 U.S.C. § 794, only permits a right of action against an entity receiving federal financial assistance, that Plaintiff has failed to allege that Defendant is an entity receiving federal financial assistance, and that, in fact, Defendant does not receive federal financial assistance for its work at SONGS. Section 504 prohibits any program or activity receiving federal financial assistance from excluding an individual from participating in the program or activity, denying an individual the benefits of the program or activity, or subjecting an individual to discrimination, solely by reason of the individual's disability. See 29 U.S.C. § 794(a). Individuals aggrieved under § 794 by an act of a recipient of federal assistance are provided a private right of action. See id.

1 | § 794a(a)(2).

2 |     Plaintiff alleges in his FAC that he suffered discrimination by Defendant based

3 | on his disability. (FAC ¶ 44.) Plaintiff also alleges that Defendant was a subcontractor

4 | of SCE working on various projects at SONGS where it <u>may</u> have been a recipient of

5 | federal funding. (<u>Id.</u> ¶ 4 (emphasis added).) In evaluating Plaintiff's allegations for

6 | purposes of a motion to dismiss, the Court must construe the complaint in the light most

7 | favorable to the plaintiff and accept all well-pleaded factual allegations as true. <u>See</u>

8 | <u>Cahill</u>, 80 F.3d at 337–338. Even under these standards, the Court concludes that

9 | Plaintiff has not adequately plead that Defendant is the recipient of federal assistance,

10 | which is required to state a claim under section 504. Accordingly, the Court grants

11 | without prejudice  Defendant's motion to dismiss Plaintiff's disability discrimination

12 | claim under the Rehabilitation Act.

13 | **E.    Federal Enclave Doctrine**

14 |     Defendant alleges that Plaintiff's claims for wrongful termination in violation of

15 | public policy (claim one), disability discrimination under FEHA (claim two), retaliation

16 | under FEHA (claim three), violations of California's Labor Code (claim four), and

17 | intentional infliction of emotional distress (claim six) are barred by the federal enclave

18 | doctrine.

19 |     Article I, Section 8, Clause 17 of the United States Constitution provides that

20 | Congress shall have the power to exercise exclusive legislation over all places

21 | purchased by the consent of the legislature of the state in which the same shall be. This

22 | constitutional provision permits the continuance of those state laws existing at time of

23 | surrender of sovereignty, except insofar as they are inconsistent with the laws of the

24 | United States or with the governmental use for which the property was acquired, unless

25 | they are abrogated by Congress, so that no area may be left without a developed legal

26 | system for private rights. <u>See</u> <u>Pacific Coast Dairy v. Department of Agriculture of Cal.</u>,

27 | 318 U.S. 285, 294 (1943); <u>James Stewart & Co. v. Sadrakula</u>, 309 U.S. 94, 99-100

28 | (1940). Because the federal government has exclusive jurisdiction, such laws become

06cv1414

1    federal laws, although having their origin in the laws of the state.  See James Stewart
2    & Co., 309 U.S. at 100; Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1250 (9th
3    Cir. 2006 ("Federal courts have federal question jurisdiction over tort claims that arise
4    on 'federal enclaves.'"); Mater v. Holley, 200 F.2d 123, 124 (5th Cir. 1952); see also
5    91 C.J.S. United States § 15 (2006).

6          Only state laws in effect at the time of cession or transfer of jurisdiction,
7    however,  can continue in operation.  See James Stewart & Co., 309 U.S. at 100.  Laws
8    subsequently enacted by the state are inapplicable in the federal enclave unless they
9    come within a reservation of jurisdiction or are adopted by Congress.  See id.; Paul v.
10   United States, 371 U.S. 245, 268 (1963); see also 91 C.J.S. United States § 15.

11          The Court has taken judicial notice of the fact that SONGS is located within the
12   federal enclave of Camp Pendleton, which was acquired by the federal government no
13   later than December 31, 1942.  Defendant argues that all or part of Plaintiff's first,
14   second, third, fourth, and sixth claims are based on California laws enacted after the
15   transfer of jurisdiction of the area encompassing SONGS to the federal government, and
16   therefore those claims must be dismissed.  Plaintiff counters, relying on Taylor v.
17   Lockheed Martin Corp., 78 Cal. App. 4th 472, 480 (2000), and Snow v. Bechtel Const.
18   Inc. 647 F. Supp. 1514, 1521 (C.D. Cal. 1986),[3] that since he was at home when he
19   learned about Defendant's refusal to re-employ him, the federal enclave doctrine does
20   not apply.

21          Plaintiff alleges that Defendant was at all relevant times a subcontractor of SCE
22   working on various projects at SONGS.  (FAC ¶ 4.)  He alleges that he began working
23   at Defendant on or about May 1, 2004 in the facilities department of SONGS, and was
24   moved to the Unit 1 decommissioning project at SONGS on or about November 2005.
25   (Id. ¶¶ 7-9.)  Plaintiff alleges that in November 2005, he was involved in an incident
26   where he was stuck on a boom lift at SONGS, which he reported to personnel employed

27

28          [3] Plaintiff also cites an out of circuit, district court case to support his argument.
     The Court declines to address this non-binding case.

                                        - 9 -
                                                                              06cv1414

1  at Defendant (id. ¶¶ 9-14), and that in December 2005 he reported a problem with a
2  system used to remove radioactive material as SONGS. (Id. ¶ 15.) Plaintiff alleges that
3  in January 2006 he injured his thumb while working. (Id. ¶ 16.) He alleges that in
4  February 2006, he met with SCE employees at his work area regarding SCE's safety
5  department reviewing the circumstances of his injury. (Id. ¶ 21.) He alleges that at
6  some point Defendant's site manager met with another employee of Defendant at the
7  site manager's office, and that the site manager told the employee that Plaintiff was a
8  trouble maker. (Id. ¶ 23.) He alleges that beginning on February 16, 2006, and for the
9  next three weeks, Defendant assigned him work requiring the use of both hands despite
10 the fact that he provided his foreman and a safety department representative a note from
11 his orthopedist stating he was not to use his left hand. (Id. ¶¶ 25-27.)   Plaintiff alleges
12 that on March 6, 2006, Defendant laid him off, and that in late October 2006, he learned
13 that defendant refused to put him back to work, claiming that no light duty work was
14 available. (Id. ¶¶ 28-30.)

15     In Taylor, the court rejected the argument that the plaintiff's wrongful
16 termination claim should not be barred by the federal enclave doctrine because Plaintiff
17 was terminated while he was on paid suspension and therefore not working on the
18 enclave. See Taylor, 78 Cal. App. 4th at 481. The Court noted that "[a]s the employee
19 of a contractor operating on the enclave, [plaintiff's] claims are governed by the
20 enclave's law, rather than by state law." See id. (citing Hancock v. Train, 426 U.S. 167,
21 178-180 (1976)). The Snow court concluded that the federal enclave doctrine precluded
22 the plaintiff's wrongful termination claim because "all pertinent events occurred on a
23 federal enclave." See Snow, 647 F. Supp. at 1521. The Court concludes that all the
24 pertinent allegations in Plaintiff's FAC regarding Plaintiff's claims for wrongful
25 termination in violation of public policy, disability discrimination under FEHA,
26 retaliation under FEHA, violations of California's Labor Code, and intentional
27 infliction of emotional distress allegedly occurred at SONGS, and therefore these claims
28 are subject to the federal enclave doctrine.

1    Since these claims are subject to the federal enclave doctrine, any of the claims
2 based on state law enacted after December 31, 1942, the date the Court took judicial
3 notice that the federal government obtained jurisdiction over Camp Pendleton, are
4 inapplicable in the federal enclave unless they come within a reservation of jurisdiction
5 by California or are adopted by Congress. See Paul, 371 U.S. at 268; Goodyear Atomic
6 Corp. v. Miller, 486 U.S. 174, 181 n.1 ("Direct state regulation of federal facilities is
7 allowed only to the extent that Congress has clearly authorized such regulation.").

8    Plaintiff's first claim is a state law claim for wrongful termination in violation of
9 public policy. The common law claim for wrongful termination in violation of public
10 policy was first recognized in California, at the earliest, in 1959. See Taylor, 78 Cal.
11 App. 4th at 486 (barring wrongful termination in violation of public policy claim based
12 on California law in suit based on events occurring in federal enclave). Plaintiff does
13 not argue that a claim for wrongful termination in violation of public policy comes
14 within a reservation of jurisdiction or that it was adopted by Congress. Therefore this
15 claim is barred by the federal enclave doctrine. Accordingly, the Court grants with
16 prejudice Defendant's motion to dismiss this claim.

17    Plaintiff's second and third claims, for failure to accommodate and retaliation,
18 are based, in part, on FEHA, section 12940 et seq. of California's Government Code.
19 FEHA was not enacted until 1980. See Taylor, 78 Cal. App. 4th at 483 (citing Cal.
20 Stats. 1980, ch. 992, § 4, pp. 3148-3149). "The predecessor statutes of FEHA were
21 contained in the Fair Employment Practices Act, which was not enacted until 1959."
22 Id. (citing former Cal. Labor Code, § 1410 et seq., added by Cal. Stats. 1959, ch. 121,
23 § 1, pp. 1999-2005). Plaintiff does not argue that these claims come within a
24 reservation of jurisdiction by California or that FEHA was adopted by Congress.
25 Therefore Plaintiff's second and third claims, to the extent that they are based on
26 FEHA, are barred by the federal enclave doctrine. Accordingly, the Court grants with
27 prejudice Defendant's motion to dismiss these claims.

28    Plaintiff's sixth claim, for intentional infliction of emotional distress, was first

- 11 -

06cv1414

1  recognized by California courts after the Restatement of Torts was amended in 1947 to

2  recommend allowing a claim based on the violation of a plaintiff's interest in peace of

3  mind without the necessity of showing the elements of any traditional torts such as

4  assault, battery, false imprisonment, trespass, defamation, or invasion of privacy. See

5  5 B.E. Witkin, Summary Of California Law: Torts, §§ 449-50 (10th ed.2005) (citing

6  State Rubbish Collectors Assn. v. Siliznoff, 38 Cal. 2d 330, 336 (1952); Bowden v.

7  Spiegel, 96 Cal. App. 2d 793, 795 (1950); Richardson v. Pridmore, 97 Cal. App. 2d

8  124, 129 (1950)).  Plaintiff does not argue that a claims for intentional infliction of

9  emotional distress comes within a reservation of jurisdiction by California or that the

10  tort was adopted by Congress.  Therefore Plaintiff's claim for intentional infliction of

11  emotional distress is barred by the federal enclave doctrine.  Accordingly, the Court

12  grants with prejudice Defendant's motion to dismiss this claim.

13         Plaintiff's fourth cause of action alleges violations of sections 98.6, 1102.5, 132a,

14  6310, 6311, 6402, 6403, and 6404 of California's Labor Code.  Section 98.6 of the

15  Labor Code was adopted in 1978. See Cal. Stats. 1978, ch. 1250, § 1, p. 4064.  Section

16  98.6 of California's Labor Code was derived from former section 1196 of California's

17  Labor Code, which was adopted by the California Legislature in 1937.  See Cal. Stats.

18  1937, ch. 90, § 1196, p. 217.  Prior to the 1978 statute, however, former section 1196

19  of California's Labor Code simply made it a misdemeanor for anyone to discriminate

20  against an employee for testifying in an investigation of California's Labor

21  Commissioner. See id.  Plaintiff does not allege in the FAC that he was discriminated

22  against for offering testimony to the Labor Commissioner.  Rather, his claim pursuant

23  to section 98.6 of the Labor Code is allegedly based on unsafe working conditions and

24  retaliation for reporting those conditions.  Section 98.6 prohibits discrimination in the

25  workplace based on various reasons, including termination because of "the exercise by

26  the employee . . . on behalf of himself, herself, or others of any rights afforded him or

27  her." See Grinzi v. San Diego Hospice Corp., 120 Cal. App. 4th 72, 86 (2004).  "Any

28  rights," for purposes of a suit brought under section 98.6, has been interpreted as those

1    rights otherwise protected by the Labor Code. See id. This much more expansive
2    language of section 98.6 relied upon by Plaintiff was not added by the California
3    Legislature until 1978. Furthermore, Plaintiff does not argue that a claim under section
4    98.6 comes within a reservation of jurisdiction by California or that this section was
5    adopted by Congress.   Therefore Plaintiff's claim pursuant to section 98.6 of
6    California's Labor Code is barred by the federal enclave doctrine. Accordingly, the
7    Court grants with prejudice Defendant's motion to dismiss this claim.

8         Section 1102.5 of California's Labor Code was adopted in 1984. See Cal. Stats.
9    1984, ch. 1083, § 1. Plaintiff does not argue that a claim under section 1102.5 comes
10   within a reservation of jurisdiction by California or that this section was adopted by
11   Congress. Therefore Plaintiff's claim pursuant to section 1102.5 of California's Labor
12   Code is barred by the federal enclave doctrine.  Accordingly, the Court grants with
13   prejudice Defendant's motion to dismiss this claim.

14        Section 132a of California's Labor Code, which in its current form prohibits
15   discrimination against workers injured in the course of their employment, was adopted
16   in 1972. See Cal. Stats. 1972, ch. 874, § 1, p. 1545. Although a previous version of §
17   132a of California's Labor code was adopted in 1941, that version did not address
18   discrimination by an employer based on an employee's injury, but rather prohibited an
19   employer from discriminating against an employee for filing an application or
20   complaint with, or testifying in an investigation held by, the Labor Commissioner. See
21   Cal. Stats. 1941, ch. 401, § 1, p. 1686.  Furthermore, Plaintiff does not argue that a
22   claim under section 132a comes within a reservation of jurisdiction by California or that
23   this section was adopted by Congress. Therefore Plaintiff's claim pursuant to section
24   132a of California's Labor Code is barred by the federal enclave doctrine. Accordingly,
25   the Court grants with prejudice Defendant's motion to dismiss this claim.

26        Sections 6310 and 6311 of California's Labor Code were adopted in 1973. See
27   Cal. Stats. 1973, ch. 993, §§ 59, 61, p. 1930.  Section 6311 was derived from former
28   section 6604 of the Labor Code, adopted by the California Legislature in 1949. See

06cv1414

1   Cal. Stats. 1949, ch. 1060, § 1, p. 1968. Therefore, both of these California statutes are

2   inapplicable in SONGS unless they come within a reservation of jurisdiction or were

3   adopted by Congress.

4       Plaintiff argues, relying on <u>Taylor</u>, that sections 6310 and 6311 of California's

5   Labor Code have been approved by Congress for enforcement within a federal enclave.

6   Sections 6310 and 6311 are part of the California Occupational Safety and Health Act,

7   Cal. Labor Code §§ 6300 et seq., which was enacted in 1973, and approved by the

8   federal Occupational Safety and Health Administration in 1975. <u>See</u> <u>Taylor</u>, 78 Cal.

9   App. 4th at 484. In <u>Taylor</u>, the court held that a plaintiff was able to bring a claim for

10  alleged violations of the whistleblower provisions of subsections (a) and (b) of section

11  6310[4] occurring on a federal enclave because the Secretary of Labor, as authorized by

12  Congress, approved a California Occupational Safety and Health Administration

13  ("Cal/OSHA") plan to allow state safety regulation of federal enclaves when the

14  responsible federal agency does not claim exclusive jurisdiction. <u>See</u> <u>id.</u> at 483-85

15  (citing Cal. Labor Code § 6303 (defining "place of employment" within California as

16  "any place, and the premises appurtenant thereto, where employment is carried on,

17  except a place the health and safety jurisdiction over which is vested by law in, and

18  actively exercised by, any state or federal agency . . . ."); 29 C.F.R. § 1952.172(b)(4)

19  (providing "The U.S. Department of Labor will continue to exercise authority, among

20  _____

21      [4] Section 6310 provides in part that:
    (a) No person shall discharge or in any manner discriminate against any employee
22  because the employee has done any of the following: [¶] (1) Made any oral or written
    complaint to the [Division of Occupational Safety and Health], other governmental
23  agencies having statutory responsibility for or assisting the division with reference to
    employee safety or health, his or her employer, or his or her representative, . . . .

24  (b) Any employee who is discharged, threatened with discharge, demoted, suspended,
    or in any other manner discriminated against in the terms and conditions of employment
25  by his or her employer because such employee has made a bona fide oral or written
    complaint to the [Division of Occupational Safety and Health], other governmental
26  agencies having statutory responsibility for or assisting the division with reference to
    employee safety or health, his or her employer, or his or her representative, of unsafe
27  working conditions, or work practices, in his or her employment or place of
    employment . . . shall be entitled to reinstatement and reimbursement for lost wages and
28  work benefits caused by the acts of the employer.

- 14 -

06cv1414

1 other things, with regard to: [¶] . . . . (4) Private contractors on Federal installations

2 where the Federal agency claims exclusive Federal jurisdiction, challenges State

3 jurisdiction and/or refuses entry to the State . . . .").  Since the responsible federal

4 agency, the United States Air Force, allowed inspectors from Cal/OSHA to investigate

5 the plaintiff's complaints regarding his termination from a civilian contractor operating

6 on the federal enclave, the Taylor court concluded that the federal agency did not claim

7 exclusive jurisdiction, and therefore California's occupational safety laws applied since

8 the federal agency was not actively exercising its jurisdiction.  See id.

9       Plaintiff's FAC does not allege that the federal agency responsible for the federal

10 enclave in which SONGS resides took any action indicating that it was not claiming

11 exclusive jurisdiction or that it was not actively exercising its jurisdiction.  Therefore,

12 the Court concludes that Plaintiff has failed to allege sufficient facts to support a claim

13 under section 6310 or 6311 of California's Labor Code.  Accordingly, the Court grants

14 without prejudice Defendant's motion to dismiss Plaintiff's claims pursuant to sections

15 6310 and 6311 of California's Labor Code.

16       Sections 6402, 6403, and 6404 of California's Labor Code were adopted by the

17 California Legislature in 1973.  See Cal. Stats. 1973, ch. 993, § 96, p. 1939.  The

18 statutes derive from very similar statutes codified in the same sections of California's

19 Labor Code, however, that were adopted in 1937. See Cal. Stats. 1937, ch. 90, §§ 6402-

20 04, p. 309.  Since these laws were in effect at the time Camp Pendleton became a

21 federal enclave in 1942, they were federalized and are not barred by the federal enclave

22 doctrine.  See James Stewart & Co., 309 U.S. at 99-100.  Accordingly, the Court denies

23 Defendant's motion to dismiss Plaintiff's claims pursuant to sections 6402, 6403, and

24 6404 of California's Labor based on the federal enclave doctrine.

25 **F.    Defendant's Other Arguments Regarding Plaintiff's Labor Code Claims**

26     **1.    Sections 6402, 6403, and 6404 of California's Labor Code**

27       Defendant argues that Plaintiff's claims under sections 6402, 6403, and 6404 of

28 California's Labor Code should be dismissed because these statutes do not provide

- 15 -

06cv1414

1  private rights of action. Section 6402 states that "[n]o employer shall require, or permit
2  any employee to go or be in any employment or place of employment which is not safe
3  and healthful."  Section 6403 provides that an employer shall not fail or neglect to
4  provide and use safety devices and safeguards reasonably adequate to render the
5  employment and place of employment safe, to adopt and use methods and processes
6  reasonably adequate to render the employment and place of employment safe, and to
7  do every other thing reasonably necessary to protect the life, safety, and health of
8  employees. See Cal. Lab. Code § 6403. Section 6404 states that "[n]o employer shall
9  occupy or maintain any place of employment that is not safe and healthful." These and
10  similar requirements are sometimes referred to as the "general duties clauses." See
11  California Correctional Supervisors Organization, Inc. v. Dept. of Corrections, 96 Cal.
12  App. 4th 824, 830-31 (2002); see also Ming W. Chin et al., California Practice Guide:
13  Employment Litigation ¶ 13:41 (The Rutter Group 2006). The general rule is that
14  actions by an employee against an employer for workplace injuries are subject to
15  workers' compensation exclusivity. See Chin, et al., supra, ¶ 13.42. Therefore, the
16  Court concludes that there is no private right of action under sections 6402, 6403, or
17  6404 of California's Labor Code.   Accordingly, the Court grants with prejudice
18  Defendant's motion to dismiss Plaintiff's claims under these sections.

19      2.      Sections 98.6, 1102.5, 132a of California's Labor Code

20      Since the Court has previously granted Defendant's motion to dismiss Plaintiff's
21  claims pursuant to sections 98.6, 1102.5, and 132a of California's Labor Code pursuant
22  to the federal enclave doctrine, the Court declines to address Defendant's other
23  arguments regarding these claims.

24  G.   Negligent Supervision Claim

25      Defendant argues that Plaintiff's negligent supervision claim should be dismissed
26  because it is barred by workers' compensation exclusivity provisions of California labor
27  law. Plaintiff alleges that Defendant breached an owed duty by its failure to "advise"
28  Plaintiff of unsafe working conditions, and to "obtain proper treatment and

06cv1414

1    accommodation following [Plaintiff's] injuries." (FAC ¶ 62-69.)

2        Subject to limited exceptions, workers' compensation is the only remedy
3    available to injured employees against an employer responsible for injuries "arising out
4    of and in the course of employment." See Cal. Lab. Code §§ 3600–3602, 5300; see also
5    Chin et al., supra, ¶ 15:520.  "The exclusivity provisions encompass all injuries
6    'collateral to or derivative of' an injury compensable by the exclusive remedies of the
7    Workers Compensation Act." Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund,
8    24 Cal. 4th 800, 813 (2001).  An injury is compensable for exclusivity purposes if two
9    conditions exist, the plaintiff is seeking to recover for an "industrial personal injury or
10   death" sustained in and "arising out of and in the course and scope of employment," and
11   the acts or motives giving rise to the injury constitute "a risk reasonably encompassed
12   within the compensation bargain." See id. at 813-814, 819-20.

13       Although disability discrimination claims are not preempted by workers'
14   compensation law because disability discrimination falls outside the compensation
15   bargain, see City of Moorpark v. Superior Ct., 18 Cal. 4th 1143, 1154–1155 (1998),
16   Plaintiff's claim is for negligent supervision, not disability discrimination.  The Court
17   concludes that Plaintiff's negligent supervision claim seeks to recover for an industrial
18   personal injury sustained in and arising out of and in the course and scope of
19   employment, and the acts and motives allegedly giving rise to the injury constitute a
20   risk reasonably encompassed within the compensation bargain, and therefore is subject
21   to workers' compensation exclusivity provisions. Cf. Coit Drapery Cleaners, Inc. v.
22   Sequoia Ins. Co., 14 Cal. App. 4th 1595, 1605-06 (1993) (claim against employer for
23   negligent supervision in connection with alleged sexual harassment and wrongful
24   termination of employee is barred by workers' compensation exclusivity principle);
25   Hine v. Dittrich, 228 Cal. App. 3d 59, 63 n.4 (1991) (stating that the exclusivity of the
26   workers' compensation remedy might preclude a civil suit for negligent supervision of
27   third party employees in some or all cases).  Accordingly, the Court grants with
28   prejudice Defendant's motion to dismiss Plaintiff's negligent supervision claim.

06cv1414

**Conclusion**

For the reasons discussed, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's disability discrimination and retaliation claims to the extent that they are based on the ADA (claims two and three). The Court **GRANTS WITH PREJUDICE** Defendant's motion to dismiss Plaintiff's claims for wrongful termination in violation of public policy (claim one), disability discrimination and retaliation to the extent that they are based on FEHA (claims two and three), violations of sections 98.6, 1102.5, 132a, 6402, 6403, and 6404 of California's Labor Code (claim four), negligent supervision (claim five), and intentional infliction of emotional distress (claim six). The Court **GRANTS WITHOUT PREJUDICE** Defendant's motion to dismiss Plaintiff's disability discrimination claim under the Rehabilitation Act (claim two), and Plaintiff's claims for violations of sections 6310 and 6311 of California's Labor Code. Plaintiff is granted thirty days from the date this order is filed to file an amended complaint correcting the deficiencies of the claims dismissed without prejudice.

IT IS SO ORDERED.

DATED: April 10, 2007

_Marilyn L. Huff_
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

COPIES TO:
All parties of record.

- 18 -

# EXHIBIT D

1

2

3

4

5

6

7

8                 **UNITED STATES DISTRICT COURT**

9               **SOUTHERN DISTRICT OF CALIFORNIA**

10

11    JAMES RICHARD STIEFEL,                    CASE NO. 06-CV-1414-H
                                                (WMC)
12                              Plaintiff,
         vs.
13                                              ORDER GRANTING
                                                DEFENDANT'S MOTION TO
14    BECHTEL CORPORATION,                      DISMISS SECOND AMENDED
                                                COMPLAINT
15                              Defendant.

16

17        On May 29, 2007, defendant Bechtel Corporation ("Defendant") filed a motion

18    to dismiss plaintiff James Richard Stiefel's (Plaintiff) second amended complaint

19    ("SAC").  (Doc. Nos. 44-45.)  On July 2, 2007, Plaintiff filed an opposition to

20    Defendant's motion to dismiss.  (Doc. No. 49.)  On July 6, 2007, Defendant filed a

21    reply.  (Doc. No. 50.)

22        The Court exercises its discretion to decide this motion on the papers, without

23    oral argument, pursuant to Civil Local Rule 7.1(d)(1).  For the following reasons, the

24    Court **GRANTS WITH PREJUDICE** Defendant's motion to dismiss Plaintiff's

25    claims pursuant to sections 6310 and 6311 of California's Labor Code, as those claims

26    are barred by the federal enclave doctrine.

27                              **Background**

28        Plaintiff began working for Defendant at the San Onofre Nuclear Generating

                                    - 1 -

                                                                   06cv1413

1   Station ("SONGS") on or about May 1, 2004 in the facilities department. (SAC ¶ 8.)

2   On or about March 6, 2006, Defendant laid off Plaintiff. (Id. ¶ 29.)    Defendant

3   performs services at SONGS pursuant to a contract it has with Southern California

4   Edison. (Id. ¶ 4.)

5        In June 2006, Plaintiff filed a complaint in San Diego County Superior Court for

6   wrongful termination in violation of public policy, failure to accommodate a disability

7   in violation of California's Fair Employment Housing Act, section 12940 et seq. of

8   California's Labor Code ("FEHA"), retaliation in violation of FEHA, violations of

9   California's Labor Code, negligent supervision, and intentional infliction of emotional

10  distress. (Compl. ¶¶ 1-74.)  Defendant removed the suit to federal court.  (Notice

11  Removal, at 1-6.)  On December 27, 2006, Plaintiff filed a first amended complaint

12  ("FAC") adding claims for failure to accommodate a disability in violation of the

13  Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA") and the

14  Rehabilitation Act, 29 U.S.C. § 701 et seq., and retaliation in violation of the ADA.

15  (FAC ¶¶ 1-75.)

16       On February 26, 2007, the Court held a hearing on Defendant's motion to

17  dismiss Plaintiff's FAC. At the hearing, Plaintiff's attorney Marcus Jackson stated that

18  he did not have a right-to-sue letter from the Equal Employment Opportunity

19  Commission ("EEOC") regarding his ADA claims. On April 10, 2007, the Court filed

20  an order dismissing without prejudice Plaintiff's disability discrimination and

21  retaliation claims based on the ADA, Plaintiff's disability discrimination claim under

22  the Rehabilitation Act, and Plaintiff's claims for violations of sections 6310 and 6311

23  of California's Labor Code.  (Doc. No. 41.)  The court dismissed with prejudice

24  Plaintiff's claims for wrongful termination in violation of public policy, disability

25  discrimination and retaliation pursuant to FEHA, violations of sections 98.6, 1102.5,

26  132a, 6402, 6403, and 6404 of California's labor code, negligent supervision, and

27  intentional infliction of emotional distress. (Id.)

28       On May 10, 2007, Plaintiff filed a SAC, in which he alleged Defendant violated

06cv1413

1    sections 6310 and 6311 of California's Labor Code. On May 29, 2007, Defendant filed
2    a motion to dismiss both claims. (Doc. Nos. 44-45.)

3                                         **Discussion**

4    **A.     Legal Standards for Motion to Dismiss**

5           Defendant has moved to dismiss both claims in Plaintiff's SAC pursuant to Rule
6    12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which
7    relief can be granted.  A motion to dismiss for failure to state a claim pursuant to
8    section 12(b)(6) tests the legal sufficiency of the claims in the complaint. See Conley
9    v. Gibson, 355 U.S. 41, 45-46 (1957). Rule 12(b)(6) permits dismissal of a claim either
10   where that claim lacks a cognizable legal theory, or where insufficient facts are alleged
11   to support plaintiff's theory. See Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699
12   (9th Cir. 1990).  While a complaint does not need detailed factual allegations to survive
13   a motion to dismiss, a plaintiff's obligation to provide the grounds of his entitlement
14   to relief requires more than labels and conclusions, or a formulaic recitation of the
15   elements of a cause of action.   See Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955,
16   1964-65 (2007).  Rather, to survive a motion to dismiss pursuant to Rule 12(b)(6),
17   factual allegations must be sufficient to raise a right to relief above the speculative
18   level, on the assumption that all the allegations in the complaint are true even if
19   doubtful in fact. See id. at 1965.

20          Dismissal is proper if a complaint is vague, conclusory, and fails to set forth any
21   material facts in support of the allegation.  See North Star Intern. v. Arizona Corp.
22   Com'n, 720 F.2d 578, 583 (9th Cir. 1983).  Furthermore, a court may not "supply
23   essential elements of the claim that were not initially pled." Ivey v. Bd. of Regents of
24   the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982). If a complaint is found to fail
25   to state a claim, the court should grant leave to amend unless it determines that the
26   pleading could not possibly be cured by the allegation of other facts. See Doe v.
27   United States, 58 F.3d 494, 497 (9th Cir. 1995).

28          As a general matter, a court may only consider the pleadings and judicially

1   noticed facts in deciding a 12(b)(6) motion. See Hal Roach Studios, Inc. v. Richard
2   Feiner & Co., 896 F.2d 1542, 1555 (9th Cir. 1990). Material that is properly attached
3   to the complaint may properly be considered for purposes of a motion to dismiss
4   without converting the motion into one for summary judgment. See id. at 1555 n.19.
5   Also, a court may consider documents whose contents are alleged in a complaint and
6   whose authenticity no party questions, but which are not physically attached to the
7   plaintiff's pleading. See Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005). This
8   doctrine extends to situations in which the plaintiff's claim depends on the contents of
9   a document and the defendant attaches the document to its motion to dismiss, even
10  though the plaintiff does not explicitly allege the contents of that document in the
11  complaint. See id.

12  **B.    Federal Enclave Doctrine**

13        Defendant alleges that Plaintiff's claims pursuant to sections 6310 and 6311 of
14  California's Labor Code are barred by the federal enclave doctrine.

15        Article I, Section 8, Clause 17 of the United States Constitution provides that
16  Congress shall have the power to exercise exclusive legislation over all places
17  purchased by the consent of the legislature of the state in which the same shall be. This
18  constitutional provision grants federal courts federal question jurisdiction over tort
19  claims that arise on federal enclaves. See Durham v. Lockheed Martin Corp., 445 F.3d
20  1247, 1250 (9th Cir. 2006); see also William W. Schwarzer, et al., California Practice
21  Guide: Civil Procedure Before Trial,¶ 2:89.10, p. 2B-30 (2005).  Furthermore, the
22  enclave clause permits the continuance of those state laws existing at the time of the
23  surrender of sovereignty, except insofar as they are inconsistent with the laws of the
24  United States or with the governmental use for which the property was acquired, unless
25  they are abrogated by Congress, so that no area may be left without a developed legal
26  system for private rights. See Pacific Coast Dairy v. Department of Agriculture of Cal.,
27  318 U.S. 285, 294 (1943); James Stewart & Co. v. Sadrakula, 309 U.S. 94, 99-100
28  (1940). Because the federal government has exclusive jurisdiction, such laws become

1  federal laws, although having their origin in the laws of the state. <u>See</u> <u>James Stewart</u>

2  <u>& Co.</u>, 309 U.S. at 100; <u>Mater v. Holley</u>, 200 F.2d 123, 124 (5th Cir. 1952); <u>see also</u>

3  91 C.J.S. United States § 15 (2006).

4       Only state laws in effect at the time of cession or transfer of jurisdiction,

5  however, can continue in operation. <u>See</u> <u>James Stewart & Co.</u>, 309 U.S. at 100. Once

6  a state cedes jurisdiction to the federal government, "an authorization of state

7  regulation is found only when and to the extent there is 'a clear congressional

8  mandate,' 'specific congressional action' that makes this authorization of state

9  regulation 'clear and unambiguous.'" <u>Hancock v. Train</u>, 426 U.S. 167, 179 (1976).

10  Therefore, a "federally owned facility performing a federal function is shielded from

11  direct state regulation, even though the federal function is carried out by a private

12  contractor, unless Congress clearly authorizes such state regulation." <u>Goodyear</u>

13  <u>Atomic Corp. v. Miller</u>, 486 U.S. 174, 180 (1988).

14       **1.**    **Plaintiff's Claims Pursuant to Sections 6310 and 6311 of California's**

15               **Labor Code**

16       The Court has previously taken judicial notice of the fact that SONGS is located

17  within the federal enclave of Camp Pendleton, which was acquired by the federal

18  government no later than December 31, 1942. (Order Granting Mot. Dismiss at 3-5.)

19  Defendant argues that sections 6310 and 6311 of California's Civil Code were enacted

20  after the transfer of jurisdiction of the area encompassing SONGS to the federal

21  government, and therefore Plaintiff's claims pursuant to those sections must be

22  dismissed.   Plaintiff counters that Congress has approved the enforcement of these

23  statutes on federal enclaves.

24       Sections 6310 and 6311 of California's Labor Code were enacted as part of the

25  California Occupational Safety and Health Act of 1973 ("Cal/OSHA"). <u>See</u> Cal. Stats.

26  1973, ch. 993, §§ 40, 59, 61, p. 1927, 1930; <u>see also</u> <u>Division of Labor Law</u>

27  <u>Enforcement v. Sampson</u>, 64 Cal. App. 3d 893, 895 (1976) ("Labor Code section 6310

28  is a part of the California Occupational Safety and Health Act of 1973.") Section 6311

1  was derived from former section 6604 of the Labor Code, adopted by the California

2  Legislature in 1949. See Cal. Stats. 1949, ch. 1060, § 1, p. 1968. Therefore, both of

3  these California statutes are inapplicable in SONGS because of the federal enclave

4  doctrine unless they come within a reservation of jurisdiction or were adopted by

5  Congress. See James Stewart & Co., 309 U.S. at 100; Paul v. United States, 371 U.S.

6  245, 268 (1963); 91 C.J.S. United States § 15.

7        Plaintiff, relying on Taylor v. Lockheed Martin Corp., 78 Cal. App. 4th 472

8  (2000), argues that Congress has authorized the enforcement of sections 6310 and 6311

9  of California's Labor Code in federal enclaves. In Taylor, the state appellate court held

10  that a plaintiff was able to bring a claim for alleged violations of the whistleblower

11  provisions of subsections (a) and (b) of section 6310 of California's Labor Code

12  occurring on an Air Force base. See Taylor, 78 Cal. App. 4th at 483-85. The Taylor

13  court reasoned that the U.S. Secretary of Labor's approval of the Cal/OSHA plan,

14  which provided for a private right of action against employers, "is the equivalent of

15  congressional action" for the purpose of permitting a plaintiff to assert a claim for relief

16  under Cal/OSHA against a federal enclave contractor, and allows state safety regulation

17  of federal enclaves when the responsible federal agency does not claim "exclusive

18  jurisdiction." See id. at 483-85 (citing Cal. Labor Code § 6303 (defining "place of

19  employment" within California as "any place, and the premises appurtenant thereto,

20  where employment is carried on, except a place the health and safety jurisdiction over

21  which is vested by law in, and actively exercised by, any state or federal agency . . . .");

22  29 C.F.R. § 1952.172(b)(4) (providing "[t]he U.S. Department of Labor will continue

23  to exercise authority, among other things, with regard to: [¶] . . . . (4) Private

24  contractors on Federal installations where the Federal agency claims exclusive Federal

25  jurisdiction, challenges State jurisdiction and/or refuses entry to the State . . . ."). Since

26  the federal agency responsible for the federal enclave, the United States Air Force,

27  allowed inspectors from California's Division of Occupational Safety and Health to

28  investigate the plaintiff's complaint that his termination from a civilian contractor

- 6 -

1  operating on the Air Force base was racially motivated and was in retaliation for a

2  previous complaint regarding safety equipment, the Taylor court concluded that the

3  federal agency did not claim exclusive jurisdiction, and therefore California's

4  occupational safety laws applied since the federal agency was not actively exercising

5  its jurisdiction. See id. Plaintiff argues that this Court should similarly conclude that

6  29 U.S.C. § 667(b), which creates a process whereby states may enact laws regarding

7  occupational safety or health issues to preempt federal standards, and 29 C.F.R.

8  1952.172(4), permit Plaintiff to bring his claims pursuant to sections 6310 and 6311

9  of California's Labor Code because no federal agency is actively exercising exclusive

10 jurisdiction over SONGS.

11       Defendant argues that Taylor incorrectly concluded that approval of Cal/OSHA

12 by the U.S. Secretary of Labor permits, under certain circumstances, enforcement of

13 Cal/OSHA within a federal enclave, because such approval does not constitute the clear

14 and unambiguous congressional approval required to permit state regulation within a

15 federal enclave. See Goodyear Atomic Corp., 486 U.S. at 180; Hancock, 426 U.S. at

16 179. Rather, Defendant argues, the Court should adopt the reasoning of Department

17 of Labor & Indus. v. Dirt & Aggregate, Inc., 120 Wash. 2d 49 (1992), in which the

18 Washington Supreme Court concluded that a status agreement between the state and

19 the Secretary of Labor did "not constitute a specific and unambiguous grant of

20 authority" to the state to enforce state laws in a federal enclave. See Department of

21 Labor & Indus., 120 Wash. 2d at 54 ("Absent a specific provision, [an] attempt to

22 imply a grant of authority from general language in OSHA is simply not sufficient to

23 support state regulation."). The Department of Labor & Indus. court added that "[i]t

24 is highly questionable that the [U.S.] Secretary of Labor has the power to

25 independently allow states to enforce workers' safety laws within a federal enclave."

26 Id. at 55 n.4. Additionally, the court concluded that even if a state intends its safety

27 and health statutes to apply to federal enclaves, under the supremacy clause, federal

28 law preempts conflicting state legislation. See id. at 56.

06cv1413

1    It appears to the Court that the <u>Department of Labor & Indus.</u> court's conclusion

2    that the approval of the U.S. Secretary of Labor of a state occupational safety and

3    health statute is not the equivalent of the clear and unambiguous congressional

4    approval required to permit plaintiffs to bring claims pursuant to state law for actions

5    occurring at a federal enclave is correct. <u>See Association of Public Agency Customers,</u>

6    <u>Inc. v. Bonneville Power Admin.</u>, 126 F.3d 1158, 1173 (9th Cir. 1997) ("[S]tates do not

7    have the power, absent absolutely clear congressional direction to the contrary, to

8    regulate transmission lines owned by . . . a federal agency."); <u>Parola v. Weinberger</u>, 848

9    F.2d 956, 960-62 (9th Cir. 1988) (concluding that federal installation was required to

10    comply with local exclusive garbage collection arrangement for solid waste collection

11    and disposal because 42 U.S.C. § 6961 "unambiguously subjects federal

12    instrumentalities to state and local regulation"); <u>see also</u> <u>Goodyear Atomic Corp.</u>, 486

13    U.S. at 181-83 (clear congressional authorization for application of state statute was

14    provided by 40 U.S.C. § 290 to allow states to apply workmen's compensation laws to

15    federal premises to same extent as such laws are applied to private facilities).

16    It is not necessary, however, for this Court to decide whether a federal agencies'

17    failure to exercise exclusive jurisdiction over an occupational safety and health issue

18    in California could ever permit a plaintiff to bring suit pursuant to Cal/OSHA at a

19    federal enclave. Rather, the Court concludes that, even under <u>Taylor's</u> permissive

20    standard, Plaintiff has failed to allege sufficient facts to support his theory that the

21    federal agency responsible for SONGS has failed to exercise exclusive jurisdiction

22    such that Plaintiff may bring his claims pursuant to sections 6310 and 6311 of

23    California's Labor Code. The <u>Taylor</u> court relied on the fact that it was undisputed that

24    Air Force officials allowed California Division of Occupational Safety and Health

25    inspectors to come onto the base to investigate the plaintiff's complaints in concluding

26    that the Air Force was not actively exercising exclusive jurisdiction such that plaintiff

27    could pursue his § 6310 claim regarding activities on the federal enclave. <u>See</u> <u>Taylor</u>,

28    78 Cal. App. 4th at 484. Therefore, Plaintiff's general allegations that no federal

06cv1413

1 | agency has exercised exclusive jurisdiction over SONGS and that the California
2 | Division of Occupational Safety and Health has authority over private sector employers
3 | and employees at SONGS and has issued citations and conducted investigation as
4 | SONGS (SAC ¶ 5) fails to allege a failure by the federal agency responsible for
5 | SONGS to exercise exclusive jurisdiction over Plaintiff's complaints of retaliation to
6 | allow Plaintiff's 6310 and 6311 claims to escape being barred by the federal enclave
7 | doctrine. Furthermore, the Court concludes that Plaintiff has demonstrated that he is
8 | unable to cure this deficiency. Accordingly, the Court grants with prejudice
9 | Defendant's motion to dismiss Plaintiff's claims pursuant to sections 6310 and 6311
10 | of California's Labor Code as they are barred by the federal enclave doctrine.

11 | **C.    Other Arguments**

12 | Since the Court has already concluded that Plaintiff's claims pursuant to sections
13 | 6310 and 6311 of California's Labor Code should be dismissed because they are barred
14 | by the federal enclave doctrine, the Court declines to address Defendant's arguments
15 | that Plaintiff has failed to allege sufficient facts to support his section 6311 claim, or
16 | that Plaintiff's jury demand and prayer for a permanent injunction, special damages,
17 | noneconomic damages, general damages, and punitive damages should be stricken.
18 | Furthermore, to the extent that Plaintiff argues that SONGS is not located on a federal
19 | enclave based on the retrocession of certain lands formerly a part of Camp Pendleton
20 | (Pl.'s Opp. Def.'s Mot. Dismiss at 1 n.1; Pl.'s Req. Judicial Notice Supp. Opp. Ex. A)
21 | the Court concludes that the document submitted by Plaintiff supports, rather than
22 | contradicts, the conclusion that SONGS is located on a federal enclave. The document,
23 | minutes from California's State Land Commission, discusses the retrocession of
24 | property from the federal government to California that borders the property on which
25 | SONGS is located. (Pl.'s Req. Judicial Notice Supp. Opp. Ex. A, at 699 (defining land
26 | retroceded as "extending southeasterly a distance of eighteen thousand, two hundred
27 | twenty feet (18,220) from the southeast boundary of an easement for construction and
28 | operation of a nuclear generating station, granted to Southern California Edison

06cv1413

1  Company and San Diego Gas and Electric Company . . . .").) Therefore, the Court
2  again takes judicial notice that SONGS is located within a federal enclave.

3                                  **Conclusion**

4         For the reasons discussed, the Court **GRANTS WITH PREJUDICE**
5  Defendant's motion to dismiss Plaintiff's claims pursuant to sections 6310 and 6311
6  of California's Labor Code, as those claims are barred by the federal enclave doctrine.
7  Since Plaintiff has no further claims before the Court at this time, the Clerk of Court
8  should close this case.

9         IT IS SO ORDERED.
10 DATED:  July 13, 2007

11
12                                    MARILYN L. HUFF, District Judge
                                      UNITED STATES DISTRICT COURT
13
14
15
16
17
18
19
20
21
22 COPIES TO:
   All parties of record.
23
24
25
26
27
28

                                      - 10 -

                                                                          06cv1413

# EXHIBIT E



1  **DANZ & GERBER**
STEPHEN F. DANZ SBN 68318
2  13418 VENTURA BOULEVARD
SHERMAN OAKS, CA. 91423
3  TEL: (818) 783-7300 FAX: (818) 995-7159

4  **DANZ & GERBER**
MARCUS JACKSON SBN 205792
5  1550 HOTEL CIRCLE NORTH, SUITE 170
SAN DIEGO, CA. 92108
6  TEL: (619) 297-9400 FAX: (619) 297-9444

7  Attorneys for Plaintiff JAMES RICHARD STIEFEL

8
9        SUPERIOR COURT OF THE STATE OF CALIFORNIA
10              FOR THE COUNTY OF SAN DIEGO
11                  NORTH COUNTY DIVISION

12  JAMES RICHARD STIEFEL, an individual;   CASE NO.: 37-2007-00054953-CU-OE-NC
13        Plaintiff,
                                            COMPLAINT FOR DAMAGES AND
14  v.                                      INJUNCTIVE RELIEF BASED UPON:

15  BECHTEL CORPORATION, a Corporation;     1.) DISABILITY DISCRIMINATION IN
    BECHTEL CONSTRUCTION COMPANY,           VIOLATION OF THE AMERICANS WITH
16  a Corporation; and DOES 1 through 100,  DISABILITIES ACT;
    INCLUSIVE,                              2.) FAILURE TO ACCOMMODATE
17                                          DISABILITY IN VIOLATION OF THE
                                            AMERICANS WITH DISABILITIES ACT; and
18        Defendants.                       3.) RETALIATION IN VIOLATION OF THE
                                            AMERICANS WITH DISABILITIES ACT;
19
20                                          **DEMAND FOR JURY TRIAL**
21
22        Plaintiff, JAMES RICHARD STIEFEL (hereinafter referred to as "MR. STIEFEL" or
23  "Plaintiff"), upon information and belief, alleges the following.
24                  **JURISDICTION AND VENUE**
25        1.    This Court has jurisdiction because at all relevant times herein Plaintiff resided in
26  this County. BECHTEL CORPORATION and BECHTEL CONSTRUCTION COMPANY are
    located in this County and do business in this County and all events constituting the conduct set
27  forth in this Complaint occurred in this County of San Diego.
28

                              1.

                         COMPLAINT

                            -4-

2.     Venue is proper in this Court under California Code of Civil Procedure Section 395 because the wrongful conduct alleged herein occurred in this County, the records relevant to Defendants' business are maintained in this County and all of the parties reside in, are located in, or operate in this County. Moreover, venue is proper within this Division because Plaintiff and Defendants reside/resided in, are located in, or operate in this Division and the events described below occurred in this Division.

## PARTIES

3.     Plaintiff MR. STIEFEL is and was at all relevant times herein an adult resident of San Diego County.

4.     Defendants BECHTEL CORPORATION ("BECHTEL CORP.") and BECHTEL CONSTRUCTION COMPANY ("BCC") (both of which hereinafter referred to as "BECHTEL") are and were at all relevant times herein corporations, with their principal places of business in California, doing business in San Diego County. BECHTEL was at all times relevant herein a subcontractor of SOUTHERN CALIFORNIA EDISON ("SCE") working on various projects at the San Onofre Nuclear Generating Station ("SONGS").

5.     Plaintiff is unaware of the true identities of the Defendants, whether individual, corporate, associate or otherwise, sued herein as Does 1 through 100 inclusive. Therefore Plaintiff sues them by such fictitious names pursuant to California Code of Civil Procedure Section 474. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants was responsible at least in part for the occurrences alleged herein and is therefore liable to Plaintiff for the damages caused thereby. Plaintiff reserves the right and will seek leave to amend this Complaint to substitute their true identities once these have been ascertained. To the extent the conduct below was perpetrated by certain Defendants, the named Defendant or Defendants confirmed and ratified the same.

6.     Plaintiff is informed and believes and, on that basis alleges, that at all times herein mentioned, each Defendant was the agent, principal and/or employee of each other Defendant in the acts and conduct alleged herein and therefore incurred liability to Plaintiff or the acts alleged below. Plaintiff is further informed and believes and, on that basis, alleges that at all times herein

2.

COMPLAINT

-5-

1 mentioned, all the Defendants were acting within the course and scope of their employment and/or

2 said agency.

3 ## GENERAL BACKGROUND FACTS

4     7.   MR. STIEFEL began his employment at BECHTEL on or about May 1, 2004 as an

5 ironworker in the facilities department of SONGS. He worked in that capacity for approximately

6 one and a half years until BECHTEL transferred him to another area.

7     8.   BECHTEL moved MR. STIEFEL to the Unit 1 decommissioning project on or

8 about November 2005.

9     9.   During November 2005 while MR. STIEFEL was employed with the Unit 1

10 decommissioning project at SONGS, there was an incident with the boom lift. He and another

11 worker were stuck ninety feet in the air on the boom lift as numerous workers on the ground had

12 trouble operating the controls on the lift. Numerous workers continued to endanger them by

13 manipulating the controls, at one point causing the front wheels to rise six inches off the ground.

14     10.  MR. STIEFEL radioed to the workers below to stop manipulating the controls as

15 directed by the safety precautions of the lift manual. The proper procedure is to call a vendor to

16 come to aid in such an emergency situation.

17     11.  The local fire department arrived to assist with the emergency caused by the boom

18 lift malfunction. They intended to rescue MR. STIEFEL and the other worker from the boom lift,

19 but BECHTEL supervisors including JIM CARROLL and the safety representative HECTOR

20 TELLEZ refused to let the fire department get involved. They insisted on handling the emergency

21 without assistance from the local fire department.

22     12.  As a result, MR. STIEFEL and the other employee were stuck on the lift for more

23 than three hours imperiled further by the haphazard manipulation of the controls by the employees.

24     13.  BECHTEL personnel interviewed MR. STIEFEL concerning the emergency boom

25 lift malfunction. MR. STIEFEL duly reported the names of people involved, including those on the

26 ground manipulating controls and those refusing assistance from the fire department.

27     14.  BECHTEL supervisor JIM CARROLL learned that MR. STIEFEL duly reported the

28 emergency boom lift malfunction, including the fact that he mentioned JIM CARROLL's

3.

COMPLAINT

1  involvement. JIM CARROLL refused to acknowledge or speak to MR. STIEFEL for a period after
2  that time and demonstrated animosity toward MR. STIEFEL.

3      15. ·   In December 2005, MR. STIEFEL's crew was fabricating and preparing to install a
4  system to remove radioactive material in the containment building, which housed the reactor. He
5  found a cracked weld and brought it to JIM CARROLL's attention. A subsequent inspection
6  determined that up to ninety-five percent of the welds were bad. The resulting repairs delayed the
7  project for five months. JIM CARROLL made a point of criticizing MR. STIEFEL for reporting
8  the cracked weld. He made comments such as, "Richard why did you have to open your damn
9  mouth?" and, "You shouldn't have said anything about it."

10      16.    On or about January 31, 2006, MR. STIEFEL was working when he got his hand
11  wedged in a piece of equipment. He had been directed to use a specific tool by his foreman, despite
12  the fact it was not the proper tool to safely perform the task.

13      17.    During that incident on or about January 31, 2006, MR. STIEFEL suffered an injury
14  to his left thumb which turned out to be a torn tendon. Dr. Earl Miller, a BECHTEL worker's
15  compensation doctor treated MR. STIEFEL. He placed his thumb in a splint and scheduled a
16  follow up appointment on February 3, 2006 at 10:00 am. MR. STIEFEL arranged transportation to
17  the appointment with BECHTEL safety officers pursuant to long-standing rules prohibiting him
18  from operating his own vehicle on company time while injured. In fact, no safety officer provided
19  any transportation to MR. STIEFEL causing him to miss his appointment with Dr. Miller.

20      18.    On the evening of February 3, 2006, a BECHTEL insurance carrier telephoned MR.
21  STIEFEL to inquire as to the reason for missing the appointment. MR. STIEFEL explained that
22  BECHTEL should transport him to the appointment pursuant to long-standing procedures and the
23  risk of driving with an injured hand. This issue became a point of contention with BECHTEL.

24      19.    On February 7, 2006, MR. STIEFEL saw DR. EARL MILLER once again. He
25  examined his thumb and replaced it in a splint. He set up an orthopedic appointment and released
26  MR. STIEFEL without properly diagnosing or treating the injury. Dr. EARL MILLER advised that
27  MR. STIEFEL was fit to perform full time regular duties with no restrictions. In fact, MR.
28

4.

COMPLAINT

1  STIEFEL had suffered a work related torn tendon and torn ligament in this thumb, which required

2  complete immobilization and restrictions on his job duties.

3      20.     Notwithstanding the foregoing, MR. STIEFEL returned to work as instructed by DR.

4  EARL MILLER. He spoke to BECHTEL Jobsite Superintendent MIKE RODRIGUEZ and showed

5  him the paperwork from the doctor and the insurance carrier. MR. STIEFEL expressed his concern

6  that he could not perform normal duties given the injury to his thumb.

7      21.     On February 8, 2006, MR. STIEFEL returned to his work area. He then met with

8  SCE employee DAN STEMPLE, and SCE supervisor JOHN PATTERSON who is in charge of the

9  Unit 1 decommission. JOHN PATTERSON indicated he wanted the Edison safety department to

10 review the circumstances to assure proper procedure in light of MR. STIEFEL's injury.

11     22.     On February 9, 2006, MR. STIEFEL told JOHN PATTERSON he was extremely

12 concerned that BECHTEL would retaliate against him because of JOHN PATTERSON'S

13 involvement. JOHN PATTERSON expressly stated, "Richard I'm telling you right now, they

14 won't retaliate against you and they'd better not."

15     23.     Following the February 9, 2006 meeting with JOHN PATTERSON, JIM FORAL a

16 BECHTEL employee spoke with MR. STIEFEL. He stated that BARRY CLARK, the site manager

17 for BECHTEL had requested a meeting with JIM FORAL. "Jim you need to get your butt over to

18 my office right now," he reportedly said. "We've got a trouble maker on the job," BARRY

19 CLARK reportedly said according to JIM FORAL. Thereafter, JIM FORAL met with BARRY

20 CLARK regarding MR. STIEFEL's injury.

21     24.     BECHTEL set up an appointment with an orthopedist for MR. STIEFEL after SCE's

22 involvement. DR. GIALAMAS saw MR. STIEFEL on February 13, 2006. He determined that

23 MR. STIEFEL had a torn tendon. He placed MR. STIEFEL's left hand into a cast. He released

24 MR. STIEFEL to return to work, but only on light duty with no use of his left hand.

25     25.     On February 14, 2006, MR. STIEFEL returned to work and attended the regularly

26 scheduled safety meeting. He handed his BECHTEL foreman DAVE SMITH and the safety

27 department representative HECTOR TELLEZ the note from DR. GIALAMAS indicating he was to

28

5.

COMPLAINT

1   work light duty with no use of the left hand.  MR. STEIFEL was thus a qualified employee with a

2   physical disability that substantially limited major life activities.

3        26.    On February 14, 2006, MR. STIEFEL was assigned by BECHTEL work which

4   complied with DR. GIALAMAS' instructions.  On February 16, 2006, however, MR. STIEFEL

5   was assigned tasks by BECHTEL that required the use of both hands such as welding, cutting with

6   a torch, grinding, fabricating, climbing ladders and using rope to lift objects.  At this time other

7   members of his crew were assigned tasks that did not require the use of both hands.  MR. STIEFEL

8   spent the next three weeks performing tasks assigned by BECHTEL which required the use of both

9   hands even though other tasks were available that did not require the use of both hands.

10      27.    On February 16, 2006 and thereafter, BECHTEL intentionally punished MR.

11  STIEFEL by assigning him tasks which required the use of both hands even though other tasks

12  were available and it was both painful and dangerous for MR. STIEFEL to do so.  BECHTEL did

13  so in retaliation for MR. STIEFEL having made efforts to be properly diagnosed and treated for his

14  injuries and/or because of his prior complaints about unsafe working conditions.

15      28.    On or about March 6, 2006, BECHTEL laid off MR. STIEFEL.  BECHTEL

16  characterized the action as a "medical reduction in force."  BECHTEL personnel informed him that

17  his work had been satisfactory, but that he had angered BECHTEL superiors by involving SEC in

18  his medical issues.  He also was told that BECHTEL had assigned him onerous tasks since

19  February 16, 2006 in order to compel him to quit.  MR. STIEFEL refused to do so consequently

20  BECHTEL ultimately laid him off.    At all times since then BECHTEL has persistently

21  discriminated against MR. STIEFEL by passing him up for jobs that need staffing whenever jobs

22  become available each month.

23      29.    MR. STIEFEL is informed and believes that BECHTEL characterized MR.

24  STIEFEL as a "medical reduction in force" because it does not require BECHTEL to incur a "loss

25  of time" injury according to BECHTEL's worker's compensation insurance carrier.  BECHTEL

26  consequently saved money by laying off MR. STIEFEL as a "medical reduction in force," as

27  opposed to a "loss of time" injury.

28

6

COMPLAINT

30.    Plaintiff underwent surgery on his hand in June 2006 and proceeded to have regular medical checkups. In subsequent months, Plaintiff's doctor, who performed the surgery, released Plaintiff to work in a light duty capacity in late October 2006. During the late October 2006 time period, Plaintiff, while waiting at home to learn if he would be placed back at work learned that BECHTEL has refused to put him back to work, falsely claiming that no light duty work is available. On a monthly basis MR. STIEFEL has been passed over for jobs because BECHTEL has maintained and currently enforces a policy that no injured employee will be rehired without a "full medical release." This 100% healed requirement is reflected in written documents evidencing the fact that BECHTEL engages in per se violations of the Americans with Disabilities Act.

31.    MR. STIEFEL has timely filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission, confirmed and revised his original filing on a subsequent form prepared by and at the request of the EEOC and received a right to sue letter. *See* Exhibit A attached hereto. Plaintiff has timely exhausted all administrative remedies.

## FIRST CAUSE OF ACTION:
## DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
[Against ALL DEFENDANTS and DOES 1 through 100, Inclusive.]

32.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 31 above, and incorporates them herein by reference as though set forth in full.

33.    At all times mentioned herein, the Americans with Disabilities Act, 42 USC Sections 12101 et seq. ("ADA") was in full force and effect, and Defendants were and are subject to their requirements.

34.    As discussed in detail above, Plaintiff, a qualified disabled employee of BECHTEL, was subjected to disparate treatment because he is disabled. MR. STIEFEL'S disabling injury has substantially limited major life activities, including but not limited to lifting, grasping, turning, pulling, working and caring for himself. Nevertheless he is able to perform the essential functions of his job at BECHTEL with reasonable accommodations.

7.

COMPLAINT

35.    Defendants discriminated against, harassed and/or terminated Plaintiff's employment because of his disability; because he is regarded as being disabled and/or because he has a record of being disabled.

36.    The aforementioned conduct constituted unlawful disability discrimination in violation of the ADA. Under the law, BECHTEL was required to take prompt corrective action to address the discriminatory behavior but failed to do so. Instead Plaintiff was subjected to continued discrimination and ultimately was terminated based on his disability.

37.    As a direct, foreseeable, and proximate result of the actions of Defendants as described above, Plaintiff has suffered, and continues to suffer, severe emotional distress, substantial losses in salary, bonuses, job benefits, and other employment benefits she would have received from Defendants, all to the Plaintiff's damage, in an amount unknown at this time but to be established at the time of trial.

38.    As a further proximate result of the aforementioned wrongful conduct, Plaintiff has to employ the services of attorneys to pursue his legal rights, to Plaintiff's damage in an amount unknown at this time, but according to proof at trial.

39.    Based on the grossly reckless and/or intentional, malicious, and bad faith manner in which Defendants conducted themselves as described herein, by willfully violating those statutes enumerated above, Plaintiff prays for punitive damages against Defendants in an amount to be determined at the time of trial, that is sufficiently high to punish Defendants, deter them from engaging in such conduct in the future, and to make an example of them to others.

40.    Plaintiff is informed and believes, and based thereon alleges, that the outrageous conduct of Defendants, described above, was done with oppression and malice and was ratified by the other individuals who were managing agents of those directly responsible. These unlawful acts were further ratified by the Defendant employers and done with a conscious disregard for Plaintiff's rights and with the intent, design and purpose of injuring him. By reason thereof, Plaintiff is entitled to punitive or exemplary damages against Defendants for their acts as described in this cause of action in a sum to be determined at the time of trial.

/ / /

8.

COMPLAINT

1   ///

2   ///

3   ///

4

5   **SECOND CAUSE OF ACTION:**
**FAILURE TO ACCOMMODATE DISABILITY IN VIOLATION OF THE AMERICANS**
**WITH DISABILITIES ACT**
[Against all DEFENDANTS and DOES 1 through 100, Inclusive.]

6

7   41.   Plaintiff repeats and realleges paragraphs 1 through 40 above and incorporates them

8   herein by reference as though set forth in full.

9   42.   MR. STIEFEL suffered injuries leaving him disabled, requiring medication and

10  preventing him from performing his normal job duties without extreme difficulty and discomfort.
    The injury substantially limited MR. STIEFEL's major life activities, including but not limited to

11  working, lifting, grasping, turning and caring for himself.   Nonetheless, he is able to perform the

12  essential functions of his job with reasonable accommodation.

13  43.   BECHTEL is a qualifying employer under the ADA. DEFENDANTS violated the

14  law requiring reasonable accommodation of disabilities by not permitting MR. STIEFEL to work

15  light duty capacity during the period of his disability or even considering him for any other

16  available position.   Federal law establishes the burden on employers to provide reasonable

17  accommodations:

18      "The essence of the concept of reasonable accommodation is that, in
        certain instances, employers must make special adjustments to their policies for

19      individuals with disabilities." *McAlindin v. County of San Diego*, 192 F.3d 1226,
        1236. "One variety of accommodation that may be required is job restructuring

20      which can include "reassignment to a vacant position, part-time or modified work
        schedules, acquisition or modification of equipment or devices, adjustment or

21      modification of examinations, training materials or policies, the provisions of
        qualified readers or interpreters, and other similar actions." *Prillman v. United*

22      *Air Lines, Inc.* 53 Cal. App. 4th 935, 947 (1997) (citing Cal. Code of Regs. Title 2,
        Section 7293.9(a).

23  44.   DEFENDANTS failed and refused to reassign, restructure, modify, adjust or make

24  any of the required provisions or accommodations necessary for MR. STIEFEL under the

25  circumstances.

26

27  45.   As a proximate result of Defendants' conduct, Plaintiff has lost salary, past and

28  future compensation and other employment-related benefits.

9.

COMPLAINT

-12-

46. As a further and proximate result of Defendants' conduct, Plaintiff has suffered embarrassment, humiliation, loss of self-esteem and anguish, all to Plaintiff's damage in an amount unknown at this time, but according to proof at the time of trial.

47. As a further proximate result of the aforementioned wrongful conduct, Plaintiff has had to employ the services of attorneys to pursue his legal rights, to Plaintiff's damage, in an amount unknown at this time but according to proof at the time of trial.

48. Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, in bad faith, with the wrongful intention of injuring Plaintiff, from an improper and evil motive amounting to malice, and/or in conscious disregard of Plaintiff's rights. Thus, Plaintiff is entitled to an award of exemplary and punitive damages according to proof at trial.

## THIRD CAUSE OF ACTION:
### RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
[Against All Defendants and DOES 1 through 100, Inclusive]

49. Plaintiff repeats and realleges paragraphs 1 through 48 above and incorporates them herein by reference as though set forth in full.

50. Plaintiff engaged in a protected activity under the ADA when requested accommodation for his disability, which substantially limits major life activities but does not prevent him from performing the essential functions of his job so long as he is given reasonable accommodations.

51. Defendants retaliated against Plaintiff for having requested accommodation for his disability. Shortly after Plaintiff engaged in the protected activity of asking for accommodations he was given nearly impossible job tasks and terminated. Moreover he has not been rehired since his termination despite the fact that BECHTEL has hired new employees or rehired other employees continuously on a monthly basis since the time of Plaintiff's termination 2006. Such retaliation is likely to deter employees from engaging in protected activities like MR. STIEFEL did.

52. The Defendants retaliated against the Plaintiff by harassing, singling out, ostracizing, punishing and ultimately firing him as a direct result of his protected acts as expressly set forth

10.

COMPLAINT

1    above. The causal relationship between the Defendants' adverse action and MR. STIEFEL's

2    protected activity in insisting on appropriate diagnosis, treatment and accommodation for the

3    injuries he suffered may be inferred due to the short time between them.

4          53.     Such retaliation is in violation of the ADA.

5          54.     As a proximate result of Defendants' conduct, Plaintiff has lost salary, past and

6    future compensation, financial stability and other employment-related benefits.

7          55.     As a further and proximate result of Defendants' conduct, Plaintiff has suffered

8    embarrassment, humiliation, loss of self-esteem and anguish, all to Plaintiff's damage in an amount

9    unknown at this time, but according to proof at the time of trial.

10         56.     As a further proximate result of the aforementioned wrongful conduct, Plaintiff has

11    had to employ the services of attorneys to pursue his legal rights, to Plaintiff's damage, in an

12    amount unknown at this time but according to proof at the time of trial.

13         57.     Defendants committed the acts alleged herein maliciously, fraudulently, and

14    oppressively, in bad faith, with the wrongful intention of injuring Plaintiff, from an improper and

15    evil motive amounting to malice, and/or in conscious disregard of Plaintiff's rights. Thus, Plaintiff

16    is entitled to an award of exemplary and punitive damages according to proof at trial.

17

18    **WHEREFORE,** Plaintiffs pray for judgment as follows:

19         1.     For compensation for Plaintiff's lost wages, backpay, frontpay and benefits;

20         2.     For a permanent injunction enjoining Defendants, their agents, successors and

21    employees from engaging in each unlawful practice set forth above, and for such other injunctive

22    relief as the Court may deem proper;

23         3.     For economic and special damages in an amount unknown at this time, but

24    according to proof at trial;

25         4.     For non-economic and general damages in an amount unknown at this time, but

26    according to proof at trial;

27         5.     For punitive damages as allowed by law and according to proof at trial;

28         6.     For interest on overdue and unpaid wages at the prevailing legal rate.

11.

COMPLAINT

7.    For civil penalties and fees as allowed by law.

8.    For pre-judgment interest at the prevailing legal rate;

9.    For reasonable attorneys' fees and costs, pursuant to all applicable statutes or provisions of law;

10.    For such other and further relief as this Court deems just and proper;

11.    For trial by jury for all issue so triable.

DATED: October 10, 2007

DANZ & GERBER

By:

STEPHEN F. DANZ, ESQ.
MARCUS JACKSON, ESQ.
Attorneys for Plaintiff
JAMES RICHARD STIEFEL

12.

COMPLAINT

-15-

# EXHIBIT F

-5 (5/01)

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act
Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 480-2007-01344 |
| | and EEOC |

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (incl. Area Code) | Date of Birth |
|---|---|---|
| MR. JAMES STIEFEL | (949) 201-8709 | 11/27/1951 |

Street Address — City, State and ZIP Code

c/o LAW OFFICES OF DANZ & GERBER, 1550 Hotel Circle North, Suite 170, San Diego, CA 92108

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe
Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| BECHTEL CORPORATION & Bechtel Construction Co. JTS | 500 + | (949) 368-6273 |

Street Address JTS — City, State and ZIP Code

14300 Mesa Road, Bldg. G48A    San Clemente, CA 92672

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

Street Address — City, State and ZIP Code

### DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ OTHER (Specify below.)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 03/01/2006 | 02/15/2007 |

☒ CONTINUING ACTION

### THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I. I. I have been employed as an Ironworker since 2004. Since March 2006 I have repeatedly been denied a reasonable accommodation. Instead, Dave Smith (Ironworker Foreman), continued to assign me work which exceeded my medical restrictions. I went out on medical leave but was released to return to work by my physician in October 2006. However, my employer has refused to allow me to return to work in retaliation for having requested an accommodation. I was terminated on a Medical Reduction in Force JTS

II. Ryan Bowler, General Foreman, stated I must be 100% healed before I can return to work. He Said it is Bechtel's Policy JTS

III. I believe I was discriminated against due to my disability and retaliated against for having requested an accommodation and for having raised issues of unsafe working conditions in violation of The Americans with Disabilities Act of 1990, as amended. The Safety Dept. For Southern California Edison also got involved. JTS

RECEIVED

MAR 19 2007

EEOC/AGENCY
INTAKE

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 03/16/07 — Date     [signature] Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EEOC Form 161-B (3/98)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To:  James Stiefel<br>C/O Law Offices Of Danz & Gerb<br>1550 Hotel Circle North<br>San Diego, CA 92108 | From:   Los Angeles District Office<br>255 E. Temple St. 4th<br>Los Angeles, CA 90012 |

☐    *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No.<br>480-2007-01344 | EEOC Representative<br>**Bruce W. Autry,**<br>**Investigator** | Telephone No.<br>**(213) 894-5079** |
|---|---|---|

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA must be filed in a federal or state court **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

☐    More than 180 days have passed since the filing of this charge.

☒    Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒    The EEOC is terminating its processing of this charge.

☐    The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

☐    The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐    The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

**Olophius E. Perry,**
**District Director**

(Date Mailed)

cc:    Mary Moreton
Human Resources
BECHTEL CORPORATION
50 Beale Street
San Francisco, CA 94105

Marcus Jackson, Esq.
1550 Hotel Circle North
Suite 170
San Diego, CA 92108