1  **DANZ & GERBER**
STEPHEN F. DANZ SBN 68318
2  13418 VENTURA BOULEVARD
SHERMAN OAKS, CA. 91423
3  TEL: (818) 783-7300 FAX: (818) 995-7159

4  **DANZ & GERBER**
MARCUS JACKSON SBN 205792
5  1550 HOTEL CIRCLE NORTH, SUITE 170
SAN DIEGO, CA. 92108
6  TEL: (619) 297-9400 FAX: (619) 297-9444

7  Attorney for Plaintiff JAMES RICHARD STIEFEL

8

9  **UNITED STATES DISTRICT COURT**

10  **SOUTHERN DISTRICT OF CALIFORNIA**

11

12

| | |
|---|---|
| JAMES RICHARD STIEFEL, an individual;<br><br>Plaintiff,<br><br>v.<br><br>BECHTEL CORPORATION, a Corporation; BECHTEL CONSTRUCTION COMPANY, a Corporation; and DOES 1 through 100, INCLUSIVE,<br><br>Defendants. | CASE NO.: 08 CV 0037 H (WMc)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND/OR TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT**<br><br>Judge: The Honorable Marilyn L. Huff<br>Court: Courtroom 13, 5th Floor<br>Date:   February 11, 2008<br>Time:   10:30 a.m. |

20  I.    INTRODUCTION.

21        Plaintiff JAMES RICHARD STIEFEL hereby opposes Defendant BECHTEL

22  CORPORATION'S ("BECHTEL") Motion to Dismiss and to Strike his Complaint pursuant to

23  Federal Rule of Civil Procedure ("FRCP") 12(b)(6) and 12(f).  This Opposition is based on the fact

24  that Plaintiff has properly exhausted administrative remedies by timely filing a charge of

25  discrimination with the United States Equal Employment Opportunity Commission within the

26  applicable time limits.

27  / / /

28
                                        1.

II.     BACKGROUND FACTS AND PROCEDURAL HISTORY.

Mr. Stiefel began work for BECHTEL, a subcontractor of Southern California Edison ("SCE") at the San Onofre Nuclear Generating Station ("SONGS") in May 2004 as an ironworker in the facilities department. There he worked for a year and a half until he was moved over to the Unit 1 decommissioning project. Complaint ¶¶7-8.

Mr. Stiefel was working on January 31, 2006 when he got his hand wedged in a piece of equipment that he was directed to use by his foreman, despite the fact it wasn't the proper tool needed to safely perform the job. Mr. Stiefel suffered injury to his left thumb; eventually he learned it was a torn tendon. Initially Mr. Stiefel saw a company worker's compensation doctor, Dr. Earl Miller, who placed his thumb in a splint and set up a follow-up appointment for February 3, 2006 at 9:00 a.m. Mr. Stiefel saw Dr. Miller again on February 7, 2006. The doctor examined his thumb, put it back in the splint, prescribed mediation and sent Mr. Stiefel on his way. Mr. Stiefel actually had a torn tendon in his thumb but he was released to full time regular duties with no restrictions. *Id.* ¶¶16-19.

Mr. Stiefel had concerns about his ability to perform his regular duties so he decided to talk to someone higher up regarding his injury. He spoke to Mike Rodriguez, the Bechtel Jobsite Superintendent, and showed him paperwork from the insurance carrier. Mr. Stiefel then returned to his work area and his supervisor Dan Stemple, an SCE employee, took him to meet with John Patterson the SCE supervisor in charge of the Unit 1 decommission. Mr. Patterson wanted to get the Edison safety department involved to get Mr. Stiefel's injury properly addressed. Mr. Stiefel expressed concern that Bechtel would retaliate based on his consulting with SCE supervisors but Mr. Patterson indicated that no retaliation should occur. *Id.* ¶¶20-22.

After this meeting with SCE supervisors, Jim Foral, the jobsite representative employed by Bechtel, came to Mr. Stiefel and said he'd received a call from Barry Clark, the site manager for Bechtel, who stated "Jim you need to get your butt over to my office right now, we've got a trouble maker on the job." Mr. Foral met with Mr. Clark and several hours later an appointment was set up for Mr. Stiefel with an orthopedist, because of SCE's involvement. *Id.* ¶¶23-24.

1    Mr. Stiefel saw a new doctor, Dr. Gialamas, on Monday February 13, 2006.  Dr. Gialamas x-

2    rayed his hand, did manipulations on his thumb and determined that Mr. Stiefel had a torn tendon.

3    This doctor started working Mr. Stiefel's hand into a cast.  The doctor asked how long the hand had

4    been in this condition and was in disbelief upon learning that Mr. Stiefel had been performing his

5    normal duties, unrestricted, since the end of January.  Dr. Gialamas released Mr. Stiefel back to work

6    on light duty, with no use of his left hand.  *Id.*¶¶24.

7    Tuesday morning Mr. Stiefel returned to work and attended the regular morning safety

8    meeting where he handed his foreman Dave Smith the note from Dr. Gialamas.  That day and the

9    next day Mr. Stiefel was given work for which he did not have to use his left hand.  However, on

10   Thursday Mr. Stiefel was assigned tasks that required the use of both hands such as welding, cutting

11   with a torch, grinding, fabricating, climbing ladders and using rope to lift objects.  At this time the

12   rest of the crew were doing less demanding jobs that did not require both hands.  This went on for

13   three weeks.  Mr. Stiefel suffered through performing the tasks he was asked to do knowing he was

14   being punished for having complained.  All along and to this day there are and were jobs available he

15   could perform that would not require the use of both hands.  *Id.*¶¶25-27.

16   Three full weeks later, in March 2007, Mr. Stiefel was laid off.  The layoff was categorized as

17   a medical reduction in force.  Mr. Stiefel was told that no one had a problem with his work.  Rather,

18   he "pissed some people off" when he got Edison involved.  *Id.* ¶28.

19   Thereafter, in April 2006, Mr. Stiefel filed a charge of discrimination with the California

20   Department of Fair Employment and Housing ("DFEH").  He then, in June 2006, filed a Complaint in

21   Superior Court of San Diego, North County Division for wrongful termination in violation of public

22   policy, failure to accommodate disability, retaliation, violation of the California Labor Code,

23   negligent supervision and intentional infliction of emotional distress.  Subsequently Defendants

24   removed this matter to Federal Court and the parties engaged in several rounds of briefing over the

25   issue of federal enclave pre-emption.  Ultimately this Court, despite abundant evidence to the

26   contrary, ruled that SONGS is a federal enclave and further rejected the California appellate court

27   decision *Taylor v. Lockheed Martin Corp.*, 78 Cal. App. 4th 472 (2000) and ruled that California's

28

3.

MEMO. OF POINTS & AUTHORITIES IN OPPOSITION TO MOT. TO DISMISS/STRIKE

1   Occupational Safety and Health Act does not apply at SONGS.  Thus this Court dismissed Plaintiff's

2   claims for Wrongful Termination, California Labor Code Violations, Disability Discrimination under

3   the Fair Employment and Housing Act, Retaliation under the Fair Employment & Housing Act,

4   Intentional Infliction of Emotional Distress and Negligent Supervision with prejudice.  However, the

5   Court's prior dismissal of Stiefel's claims under the Americans with Disabilities Act was ***without***

6   prejudice and those claims have never been dismissed with prejudice.[1]  *See* Exhibit C to Defendants'

7   Request for Judicial Notice at 2.

8        Plaintiff underwent surgery on his hand in June 2006 and proceeded to have regular medical

9   checkups.  In subsequent months, Plaintiff's doctor, who performed the surgery, released Plaintiff to

10  work in a light duty capacity in late October 2006.  During the late October 2006 time period,

11  Plaintiff, while waiting at home to learn if he would be placed back at work learned that BECHTEL

12  has refused to put him back to work, falsely claiming that no light duty work is available.  On a

13  monthly basis MR. STIEFEL has been passed over for jobs because BECHTEL has maintained and

14  currently enforces a policy that no injured employee will be rehired without a "full medical release."

15  This 100% healed requirement is reflected in written documents evidencing the fact that BECHTEL

16  engages in per se violations of the Americans with Disabilities Act.  Complaint ¶30.

17       Based on these new facts, as well as the previous facts from the original case, Plaintiff

18  therefore filed a new charge of disability discrimination with the DFEH in December 2006 and

19  received a right to sue letter dated December 19, 2006.  *See* Exhibit A attached to Plaintiff's Request

20  for Judicial Notice, filed concurrently herewith.  Within 30 days of receiving the DFEH right to sue

21  letter Plaintiff filed a separate charge with the EEOC on January 17, 2007.  *See* Exhibit A to

22  Complaint.  The EEOC issued a right to sue letter in September of 2007 and Plaintiff timely filed this

23  action in October 2007.  *See* Exhibit A to Complaint.  Now Defendants attack a select few allegations

24  of this new Complaint based exclusively on exhaustion of administrative remedies requirements.

25  / / /

26

27  [1]  Defendants' motion misrepresents the events at the February 2007 hearing.  At that time Plaintiff had filed his charge with the EEOC, he merely had not yet received a right to sue letter as the EEOC was going to investigate for a period of 180 days before issuing a right to sue notice.  Plaintiff's counsel advised the Court and opposing counsel of this at the

28  time of the hearing of Defendant's Motion to Dismiss the First Amended Complaint in the first *Stiefel v. Bechtel* action.

MEMO. OF POINTS & AUTHORITIES IN OPPOSITION TO MOT. TO DISMISS/STRIKE

III.    ARGUMENT – PLAINTIFF HAS PROPERLY EXHAUSTED ADMINISTRATIVE REMEDIES AND THE ALLEGATIONS ATTACKED BY DEFENDANTS ARE RELEVANT BACKGROUND INFORMATION, THUS THE MOTION TO DISMISS AND/OR TO STRIKE SHOULD BE DENIED.

A.    LEGAL STANDARD ON A MOTION TO DISMISS AND MOTION TO STRIKE.

A Motion to Dismiss pursuant to Federal Rule of Civil Procedure Section 12(b)(6) tests the legal sufficiency of the claims stated in a Complaint by asking whether the facts alleged in the Complaint, which are assumed to be true, would entitle Plaintiff to relief.  The motion must be denied unless the facts alleged could not under any legal theory support a cause of action.  *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  *See also Balisteri v. Pacifica Police Dept.*, 901 F. 2d 696, 699 (9th Cir. 1990)(dismissal under FRCP 12(b)(6) is only proper where the Complaint lacks a cognizable legal theory or lacks sufficient facts to state a cognizable legal theory).  "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. at 45-46.

In ruling on the motion the Court must construe the Complaint in a light most favorable to the Plaintiff in addition to accepting the factual allegations as true and determining whether Plaintiff can prove any set of facts would entitle him to relief.  *See Cahill v. Liberty Mut. Ins. Co.*, 80 F. 3d 336, 337-38 (9th Cir. 1996).  All factual allegations, no matter how unlikely or improbable, are assumed to be true.  The Court is not called upon at the stage of a 12(b)(6) motion to weigh the strengths of each cause of action.  *See Pareto v. F.D.I.C.*, 139 F. 3d 696, 699 (9th Cir. 1998); *Jacobson v. Hughes Aircraft Co.*, 105 F. 3d 1288, 1292 (9th Cir. 1997).

Given the liberal policy in favor of amending pleadings in federal cases, motions to dismiss under FRCP 12(b)(6) are disfavored.  "The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted."  *Gilligan v. Jamco Develop. Corp.*, 108 F. 3d 246, 249 (9th Cir. 1997).  Indeed, because of the liberality required in amending pleadings pursuant to FRCP 15(a), where a Motion to Dismiss is granted leave to amend the Complaint should also be granted.  "Where a more carefully drafted complaint *might* state a claim, a plaintiff must be given at least one more

1  chance to amend the complaint before the district court dismisses the action with prejudice." *Bank v.*

2  *Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991).

3      Pursuant to Federal Rule of Civil Procedure 12(f) a Motion to Strike is directed at "any

4  redundant, immaterial, impertinent, or scandalous matter."

5

6      B.    <u>PLAINTIFF HAS PROPERLY EXHAUSTED ADMINISTRATIVE REMEDIES BY
        TIMELY FILING HIS SECOND CHARGE OF DISCRMINATION WITH THE
        DFEH IN DECEMBER 2006 AND PURSUANT TO THE WORK SHARING
7       AGREEMENT WITH THE EEOC THAT CHARGE WAS DEEMED FILED WITH
        THE EEOC AS OF THE DATE IT WAS RECEIVED BY THE DFEH.</u>

8

9      The California Department of Fair Employment and Housing ("DFEH")and the U.S. Equal

10  Employment Opportunity Commission ("EEOC") have a "work sharing" agreement pursuant to

11  which any claim of discrimination filed with one agency is deemed constructively filed with the other

12  as of the same date. *See McConnell v. General Tel. Co. of Calif*, 814 F 2d 1311 (9th Cir. 1987).

13  *McConnell* involved an age discrimination claim under the federal Age Discrimination in

14  Employment Act and the determination that a timely filing for age discrimination with the DFEH

15  constituted a filing with EEOC because the DFEH is a "deferral agency" to which the EEOC will

16  defer matters for investigation.

17      "The facts involved herein occurred in California, a deferral state under the ADEA. A deferral
        state is one to which the EEOC has agreed to defer cases for preliminary investigation; here
18      the agency is the DFEH. When a deferral agreement exists, the regulation regarding
        simultaneous filing . . . will be enforced."

19

20  *McConnell*, 814 F. 2d at 1316.

21      The fact that Stiefel first filed his claim with a state agency enforcing its own

22  antidiscrimination laws extends the deadline for filing a claim with the EEOC from the standard 180

23  to 300 days. *See eg, Laquaglia v. Rio Hotel& Casino, Inc.*, 186 F. 3d 1172, 1174 (9th Cir. 1995).[2]

24  There is a wrinkle in the federal law that provides that where a charge is first filed with a state agency

25  any EEOC action is stayed for a period of 60 days, thereby shortening the deadline to file with the

26  EEOC from 300 to 240 days, unless the state agency either waives the stay or terminates its

27  _____

28  [2] The EEOC has certified that the DFEH is a state agency whose findings and resolutions the EEOC is willing to
    accept. *See* 29 C.F.R. §§1601.75 & 1601.80.

MEMO. OF POINTS & AUTHORITIES IN OPPOSITION TO MOT. TO DISMISS/STRIKE

08 CV 0037 H (WMc)

1  proceedings before the 60 days is up.  That issue does not arise here since pursuant to the work

2  sharing agreement between the DFEH and the EEOC the DFEH has waived the 60-day stay, thus

3  permitting the EEOC to immediately investigate.  *Id.* at 1174-1175.  *See also Downs v. Dep't of*

4  *Water & Power*, 58 Cal. App. 4th 1093, 1097 (1997) ("When a charge of discrimination or harassment

5  is timely filed concurrently with the EEOC and the DFEH, the investigation of the charge is deferred

6  by the DFEH to the EEOC under a work-sharing agreement.").

7       Nonetheless, even if the DFEH had not deferred to the EEOC, the DFEH completed its

8  investigation and issued a right to sue letter in December 2006.  *See* Exhibit A attached to Plaintiff's

9  Request for Judicial Notice, filed concurrently herewith.  Page five of Exhibit A to Plaintiff's

10 Complaint shows that the EEOC was notified of the fact that a DFEH filing had been submitted in

11 December 2006.   This December 2006 filing with the DFEH satisfies the exhaustion of remedies

12 requirement as to the EEOC as well, despite the fact that Stiefel, out of an abundance of caution, went

13 ahead and filed a claim directly with the EEOC after receiving his second DFEH right to sue letter.

14      Therefore, Stiefel's December 2006 DFEH charge is deemed filed with the EEOC on the

15 same date, that date being less than 300 days since his termination in March 2006.  Stiefel has thus

16 timely exhausted all administrative remedies.  "Charges filed between 180 days and 300 days of the

17 unlawful act are timely as to the Title VII claim if filed initially with the DFEH."  Chin, Wiseman,

18 Callahan & Exelrod, California Practice Guide: Employment Litigation, Section 16:47 (The Rutter

19 Group 2007).[3]  Defendants' motion should be denied in its entirety.

20 / / /

21 / / /

22 / / /

23 / / /

24

25 [3]  The same dual filing rules apply to claims of disability discrimination or failure to accommodate disability under the Americans with Disabilities Act.  By filing first with the DFEH Stiefel had 300 days from the date of his termination to

26 file with the EEOC concerning that termination. *See Tewksbury v. Ottaway Newspapers*, 192 F. 3d 322, 325 (2nd Cir. 1999) (300 day deadline applies for filing ADA claim with EEOC where the disability claim is first filed with a state

27 agency).  As is clearly established above, the work sharing agreement between the DFEH and the EEOC deems any claim filed with one agency to be filed with the other on the same date. *See Salgado v. Atlantic Richfield Co.*, 823 F. 2d 1322, 1325-26 (9th Cir. 1987) ("Salgado filed his original complaint with the EEOC. The EEOC automatically filed the

28 complaint with the Department under the agencies' work sharing agreement.").

MEMO. OF POINTS & AUTHORITIES IN OPPOSITION TO MOT. TO DISMISS/STRIKE

08 CV 0037 H (WMc)

C.    <u>PLAINTIFF CAN FILE A SUBSEQUENT DFEH OR EEOC CHARGE BASED IN PART ON THE SAME EVENTS AS A PRIOR CHARGE SO LONG AS THE SUBSEQUENT CHARGE OF DISCRIMINATION IS TIMELY, AND DEFENDANTS HAVE NO AUTHORITY TO THE CONTRARY</u>.

Plaintiff has satisfied the EEOC filing requirements by submitting his second DFEH Complaint in December 2006 and receiving a DFEH right to sue letter.  *See* Exhibit A attached to Plaintiff's Request for Judicial Notice, filed concurrently herewith.  The second DFEH charge of discrimination, which was based on new allegations of failure to hire in addition to the discriminatory termination allegations of the April 2006 DFEH charge, was timely.  Defendants offer no authority for the proposition that Stiefel is limited to filing only one DFEH Complaint.  So long as the later Complaint was timely, which it was (and thereby it was dual filed with the EEOC so the EEOC filing was timely as well), there is no case or statute invalidating the later DFEH filing because it repeated allegations and incidents from the earlier DFEH Complaint.

D.    <u>EVEN IF THE LATER DFEH/EEOC FILING WERE UNTIMELY AS TO PLAINTIFF'S TERMINATION, THE ALLEGATIONS DEFENDANTS SEEK TO STRIKE ARE PROPER AS BACKGROUND EVIDENCE IN SUPPORT OF PLAINTIFF'S TIMELY ALLEGATIONS OF FAILURE TO HIRE</u>.

Even if the law did not provide that the December 2006 DFEH Complaint was deemed filed with the EEOC at the same time or if there were some rule prohibiting multiple DFEH filings as to the same events, the allegations of Defendants' failure to accommodate Plaintiff's disability up to and including his termination are properly alleged in the Complaint in this action.  The U.S. Supreme has held that even where a wrongful termination or other acts of discrimination are not part of a timely field EEOC charge, they are still relevant as background factual material.  *See National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101 (2002) ("Nor does the [EEOC filing] statute bar an employee from using prior acts as background evidence in support of a timely claim.").  Obviously the allegations that Defendants failed to accommodate Stiefel's disability and terminated his employment in violation of the Americans with Disabilities Act are relevant background evidence showing Defendants' discriminatory motive.  Defendants do not contest that Plaintiff's new allegations of failure to hire based on disability are timely as Defendants have not attacked these

8.

MEMO. OF POINTS & AUTHORITIES IN OPPOSITION TO MOT. TO DISMISS/STRIKE

1  allegations in their motion.  The details concerning Plaintiff's termination provide support for the

2  failure to hire allegations.  Indeed, if the termination details were stricken there would be a gap in the

3  factual section of Plaintiff's Complaint rendering it incomplete and vague.  Because the termination

4  and prior discriminatory conduct alleged in the current Complaint provide background information

5  relevant to the failure to hire claim, these background allegations should not be stricken.  The

6  information at paragraphs 23 and 27-29 of the Complaint are not redundant, immaterial, impertinent

7  or scandalous, rather they are relevant to the other allegations that Defendants have not moved to

8  dismiss or strike.

9

10  IV.    CONCLUSION

11        For all the foregoing reasons, Plaintiff respectfully requests that Defendants' Motion to

12  Dismiss and/or Motion to Strike should be denied.  Should the Court grant any part of Defendant's

13  motion Plaintiff respectfully requests that the Court grant him leave to amend to allege that he

14  properly exhausted administrative remedies by filing a second DFEH charge in December 2006

15  which was deemed filed with the EEOC pursuant to the agencies' work sharing agreement.

16

17                                                  DANZ & GERBER

18  DATED:      January 28, 2008          By:    /s/ Marcus Jackson
                                                 STEPHEN F. DANZ, ESQ.
19                                               MARCUS JACKSON, ESQ.
                                                 Attorneys for Plaintiff
20                                               JAMES RICHARD STIEFEL

21

22

23

24

25

26

27

28

9.

MEMO. OF POINTS & AUTHORITIES IN OPPOSITION TO MOT. TO DISMISS/STRIKE

08 CV 0037 H (WMc)