# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| JAMES RICHARD STIEFEL,<br><br>       Plaintiff,<br>vs.<br><br>BECHTEL CORPORATION and BECHTEL CONSTRUCTION COMPANY,<br><br>       Defendants. | CASE NO. 08-CV-0037 H (WMc)<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS OR TO STRIKE FIRST AMENDED COMPLAINT AND FOR SANCTIONS |
|---|---|

  On February 7, 2008, the Court dismissed Plaintiff's initial Complaint. (Doc. No. 10.) Plaintiff filed a First Amended Complaint ("FAC") on March 8, 2008. (Doc. No. 11.) On March 26, 2008, Defendants filed a motion to dismiss and/or strike the FAC, also requesting sanctions. (Doc. No. 13.) Plaintiff filed an opposition on April 21, 2008. (Doc. No. 15.) Defendants filed their reply on April 28, 2008. (Doc. No. 17.) On April 29, 2008, Plaintiff filed a notice clarifying that he does not object to striking one sentence from the FAC, which he admits was retained in error. (Doc. No. 19.) The Court previously submitted this motion without oral argument pursuant to Local Civil Rule 7.1(d)(1). (See Doc. No. 16.) For the following reasons, the Court grants in part and denies in part the pending motion.

/ / /

/ / /

# **Background**

The following facts are drawn from the allegations of the FAC and the parties' requests for judicial notice, which the Court granted in their entirety in its order of February 7, 2008.  See Fed. R. Evid. 201(b), (d); Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001).

## I.    Factual Background of Plaintiff's Complaint

Defendants provide services at the San Onofre Nuclear Generating Station ("SONGS") as a subcontractor of Southern California Edison ("SCE"). (FAC ¶ 4.) Beginning in May of 2004, Defendants employed Plaintiff as an ironworker in the facilities department of SONGS. (Id. ¶ 7.) In November of 2005, Defendants moved Plaintiff to the Unit 1 decommissioning project. (Id. ¶ 8.) Shortly thereafter, Plaintiff was involved in an emergency caused by a boom lift malfunction. (Id. ¶¶ 9-12.) Plaintiff reported those involved to Defendants' personnel, and Plaintiff's supervisor subsequently refused to speak to Plaintiff and demonstrated animosity toward him. (Id. ¶ 13-14.) In December of 2005, Plaintiff brought to his supervisor's attention a cracked weld in a system designed to remove radioactive material in the containment building which housed the nuclear reactor, resulting in additional cost to Defendants and criticism from Plaintiff's supervisor. (Id. ¶ 15.)

On January 31, 2006, Plaintiff injured his left thumb while employed by Defendants. (Id ¶ 16-17.) A Bechtel worker's compensation doctor treated Plaintiff. (Id. ¶ 17.) The doctor placed Plaintiff's thumb in a splint and scheduled a follow-up appointment. (Id.) Plaintiff saw the doctor again on February 7, 2006, and the doctor placed Plaintiff's thumb in a splint and advised him that he could perform full time regular duties with no restrictions. (Id. ¶ 19.) The complaint alleges that the doctor failed to properly diagnose or treat the injury because, in fact, the injury required complete immobilization and restrictions on Plaintiff's job duties. (Id.)

On February 8, 2006, Plaintiff returned to his work area. (Id. ¶ 20.) John Patterson, an SCE supervisor, indicated that he wanted the SCE safety department to

review the circumstances to assure proper procedure was followed in light of Plaintiff's injury. (Id. ¶ 21) The next day, Plaintiff met with Mr. Patterson and informed him that Plaintiff was concerned that Defendants would retaliate against him because of Mr. Patterson's involvement. (Id. ¶ 22.)

The complaint alleges that, after SCE became involved, Defendants arranged an appointment with an orthopedist for Plaintiff. (Id. ¶ 24.) The orthopedist determined that Plaintiff had a torn tendon and placed Plaintiff's left hand in a cast. (Id.) He released Plaintiff to return to work, but only on light duty with no use of his left hand. (Id.)

On February 14, 2006, Plaintiff was assigned work that complied with the orthopedist's instructions. (Id. ¶ 26.) Two days later, however, Defendants allegedly assigned Plaintiff several tasks (e.g., welding, grinding, climbing ladders) that required the use of both of Plaintiff's hands. (Id.) The FAC alleges that Defendants assigned these painful and dangerous tasks to Plaintiff in order to intentionally punish him. (Id.)

On March 6, 2006, Defendants laid off Plaintiff in what Defendants characterized as a "medical reduction in force." (Id. ¶ 28.) At all times after that date, the complaint alleges that Defendants have persistently discriminated against Plaintiff by passing him up for jobs that need staffing whenever such jobs become available each month. (Id.)

Plaintiff underwent surgery on his hand in June of 2006. (Id. ¶ 30.) In late October 2006, Plaintiff's doctor released Plaintiff to work in a light duty capacity. (Id.) The complaint alleges that Defendants have refused to put Plaintiff back to work, stating that no light duty work is available. (Id. ¶ 30.) Defendants allegedly have declined "on a monthly basis" to rehire Plaintiff because Defendants maintain a policy against rehiring an injured employee without a full medical release. (Id. ¶ 30.)

/ / /
/ / /
/ / /
/ / /

## II. Plaintiff's Administrative Complaints

In April of 2006 Plaintiff filed a discrimination complaint under the California Fair Employment and Housing Act ("FEHA") with the California Department of Fair Employment and Housing ("DFEH"). (See Defs.' Request for Judicial Notice ("Defs.' RJN"), Ex. B.) Plaintiff's complaint detailed the alleged discrimination as follows: "I raised safety concerns - I was forced to use improper tools resulting in an injury to myself. I went outside the chain of command and was retaliated against." (Id.) In a letter dated May 8, 2006, the Department of Fair Employment and Housing closed Plaintiff's complaint and issued him a right-to-sue notice pursuant to Plaintiff's request that the DFEH immediately issue him a right-to-sue. (Id.) The letter informed Plaintiff that, if he desired a federal right-to-sue notice, he must file a complaint with the Equal Employment Opportunity Commission ("EEOC") within 30 days of receiving the letter from the California agency. (Id.)

On January 17, 2007, Plaintiff filed an Intake Questionnaire with the EEOC, alleging the discrimination at issue. (FAC Ex. A.) On March 6, 2007, the EEOC sent Plaintiff a Charge of Discrimination form in response. (FAC Ex. B.) The EEOC received the completed form on March 19, 2007. (Id.) In that complaint, Plaintiff stated in part:

> Since March 2006 I have repeatedly been denied a reasonable accommodation. Instead, [the ironworker foreman] continued to assign me work which exceeded my medical restrictions. I was terminated on a medical reduction in force but was released to return to work by my physician in October 2006. However, my employer has refused to allow me to return to work in retaliation for having requested an accommodation.
>
> I believe I was discriminated against due to my disability and retaliated against for having requested an accommodation and for having raised issues of unsafe working conditions in violation of [the ADA]. The safety dept. for Southern California Edison also got involved.

(Id.) Some time later,[1] the EEOC issued Plaintiff a right-to-sue notice, indicating that it was unlikely that the EEOC would complete its administrative processing within 180

---

[1] In both submitted copies of the right-to-sue notice, the "date mailed" section is illegible. (See Defs.' RJN, Ex. F.)

days of filing the charge. (Id.) Plaintiff alleges that he received the notice in September, 2007. (FAC ¶ 30.)

## III. Previous Litigation

This is the second case in this Court arising from Plaintiff's alleged hand injury and subsequent retaliation by Defendants. On June 21, 2006, Plaintiff filed a complaint in state court against Bechtel Corporation. (See Defs.' RJN, Ex. A.) That complaint alleged only state law claims, including disability discrimination and retaliation under the FEHA. (Defs.' RJN, Ex. A.) Bechtel removed the case to this Court on July 13, 2006, thereby commencing Case No. 06-CV-1414-H (WMc). (Case No. 06-CV-1414 ("'1414") Doc. No. 1.) On December 27, 2006, Plaintiff filed a first amended complaint alleging various state law claims as well as claims under the ADA and the Rehabilitation Act, 29 U.S.C. § 701 et seq. ('1414 Doc. No. 21.) On April 10, 2007, the Court dismissed without prejudice Plaintiff's disability discrimination and retaliation claims to the extent those claims were based on the ADA. The Court's dismissal was based on Plaintiff's statements, in his briefing and in a February 26, 2007 hearing, that he did not have a right-to-sue letter from the EEOC regarding his ADA claims.[2] ('1414 Doc. No. 41.)

## IV. The Preceding Order and First Amended Complaint

On February 7, 2008, the Court granted Defendants' motion to dismiss, with leave to amend, concluding that Plaintiffs' claims arising during employment, including his termination, were time-barred based on the delay between the filing of his state administrative action and his EEOC charge. (Doc. No. 10.) The Court granted leave to pursue claims "that are not time-barred or that fall within an exception" to the filing requirements of 42 U.S.C. § 2000e-5(e)(1). (Id. at 7.)

The FAC differs from the Complaint in three primary respects, as relevant to this order. First, Plaintiff expands the allegations regarding his EEOC claim, including an

---

[2] The Court dismissed with prejudice Plaintiff's state law claims. Plaintiff filed a second amended complaint alleging only state law claims. (See '1414 Doc. No. 42.) The Court dismissed that complaint with prejudice on July 13, 2007. ('1414 Doc. No. 51.) For purposes of the present case, where Plaintiff asserts only federal claims under the ADA, neither dismissal is relevant.

allegation that he filed the claim in January, 2007, in reference to the intake questionnaire. (FAC ¶ 31.) Next, the alleged background facts include statements that Plaintiff "has been passed over for rehire by Bechtel because he is not 100% healed" on "a monthly basis" since April, 2006. (Id.) Finally, the allegations in each of Plaintiff's claims now describe the unlawful conduct as occurring "at all times since May 2006." (Id. ¶¶ 35, 43-44, 50-51.) The causes of action continue to incorporate the background facts described above. (Id. ¶ 32, 41, 49.) Plaintiff concedes that the first sentence of paragraph 52 inadvertently retained retaliation allegations that were excluded by the Court's prior order. (See Plf.'s Notice of Errata, Doc. No. 18.)

## Discussion

**I.    Motion to Dismiss or to Strike**

    **A.    Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a claim either where that claim lacks a cognizable legal theory, or where insufficient facts are alleged to support plaintiff's theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In resolving a Rule 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff and accept as true all well-pleaded factual allegations. See Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996). However, to survive a Rule 12(b)(6) motion a complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955, 1965 (2007).

Rule 12(f) provides that the court may strike "any redundant, immaterial, impertinent, or scandalous matter" from a pleading. "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994). The decision to grant or deny a motion to strike is within the sound discretion of the trial court. See id.

/ / /

### B.     Compliance with the Court's Prior Order

Defendants argue that because Plaintiff's causes of action continue to incorporate the background factual allegations, including events prior to his termination, the FAC does not comply with the Court's previous order. The Court disagrees. Each cause of action now includes language characterizing the conduct in question as occurring "at all times since May 2006," or similar language. (Id. ¶¶ 35, 43-44, 50-51.) The Court previously determined that the original causes of action were time-barred to the extent they involved events leading up to and including termination in March, 2006. The Court reads the new language as limiting the time frame for the causes of action. In this respect, the Court concludes that Plaintiff has complied with its prior order by pleading causes of action arising only during or after May, 2006. Furthermore, where the claims go on to refer to "aforementioned conduct," "actions . . . described above," and similar phrases, the Court understands these references as incorporating the limiting language just discussed.

Plaintiff concedes that the first sentence of paragraph 52 contained retaliation allegations related to events leading up to and including his termination. The Court agrees and, since neither party objects, strikes the first sentence of paragraph 52.

The Court concludes that the background allegations regarding events prior to May, 2006, are not "redundant, immaterial, impertinent, or scandalous matter" that should be stricken from the pleadings. Acts such as refusal to hire constitute discrete, separately actionable practices. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002). Plaintiff has adequately alleged ongoing acts of refusing to hire that are independent of the prior discrete acts and sufficient to survive a motion to dismiss. The background facts, though related in part to time-barred practices, may be relevant to matters such as Defendants' motive. See, e.g., 42 U.S.C. § 1981a(b)(1) (providing for punitive damages with practices involving "malice" or "reckless indifference"). Furthermore, facts need not be admissible to be alleged. The Court therefore declines to strike the background material, though it continues to conclude that claims arising from acts prior to and including Plaintiff's termination are time-barred.

Certain statements in Plaintiffs briefing suggest that he seeks to recover for harm beginning as early as April, 2006, but the Court disagrees. Although the background facts make reference to events occurring in April 2006, the new limiting language in each cause of action plainly restricts the causes of action to events from May, 2006, onward. (See id. ¶ 31 (referring to filing of discrimination charge in April, 2006); ¶¶ 35, 43-44, 50-51 (limiting claims to May, 2006, and beyond).) This view is also supported by Plaintiff's Notice of April 29, 2008, which clarified that "Plaintiff's intent was to limit this cause of action [for Retaliation] to seek recovery for incidents occurring since May 2006 . . . ." (Plf.'s Notice of Errata at 1-2.)

### C. Whether Allegations Prior to Early June 2006 are Time-Barred

The Courts prior order expressly barred claims arising on or before March, 2006. Defendants now seek clarification that any actions prior to early June, 2006, are also time-barred. The DFEH sent Plaintiff a "Notice of Case Closure" dated May 8, 2006, advising him that his case was closed effective April 17, 2006 because an immediate right-to-sue notice was requested. (Defs.' RFJN Ex. B.) The Notice further advised him that any EEOC complaint must be filed within 30 days of receipt, or 300 days from the alleged discriminatory act, whichever is earlier. (Id.) Defendants argue that his claims are therefore barred before early June, 2006, depending on the date 30 days after receipt of the May 8, 2006, notice.

The Court declines to strike or dismiss claims in May and June, 2006, at this time. The date that Plaintiff actually received the notice from DFEH cannot be established when making all favorable inferences for Plaintiff, as appropriate on a Rule 12(b)(6) motion.[3]

---

[3] The parties also raise collateral disputes about the effective date of Plaintiff's EEOC charge, though the Court concludes that it is not necessary to resolve these questions at this time. In particular, the parties appear to dispute whether the intake questionnaire of January, 2007, may serve as the EEOC charge, or whether Plaintiff must rely on the actual charge filed in March, 2007. Although the Court declines to decide that question at this time, the Court directs the parties' attention to a recent Supreme Court case that abrogated the Ninth Circuit standard in this area. See Fed. Express Corp. v. Holowecki, 128 S.Ct. 1147, 1154-59 (2008) (discussing approach to be used in determining whether intake questionnaire constitutes a charge and abrogating approach of Casavantes v. Cal. State Univ., Sacramento, 732 F.2d 1441, 1443 (9th Cir. 1984)).

### D. Whether Plaintiff Fails to Allege He was a "Qualified Individual" Before October 2006

Defendants argue that, on its face, the complaint concedes that Plaintiff was not a "qualified individual" before October 2006 and therefore ineligible for any recovery before that date. A qualified individual is one who can perform the essential functions of the position that person holds or desires, with or without reasonable accommodation. 42 U.S.C. § 12111(8). A person unable to perform a job, even with reasonable accommodation, is not a qualified individual and therefore not entitled to relief under the ADA. See 42 U.S.C. § 12112(a); Kennedy v. Applause, Inc., 90 F.3d 1477, 1480-82 (9th Cir. 1996).

Since Plaintiff's doctor did not release him to light duty until October, 2006, following his hand surgery, Defendants argue that he cannot have been a qualified individual prior to that date. Plaintiff alleges, however, that he was qualified to work light duty as early as February, 2006, onward. (FAC ¶ 25.) Drawing the favorable inferences for Plaintiff appropriate at this stage, the Court concludes that Defendant has adequately pled that he was a qualified individual prior to October, 2006.

## II. Request for Sanctions

A Court may impose sanctions against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927; see Wages v. IRS, 915 F.2d 1230, 1235-36 (9th Cir. 1990) (affirming imposition of sanctions for filing an amended complaint that "did not materially differ" from one already dismissed and "continually moving for alternations in the district court's original judgment"). Award of section 1927 sanctions are a matter within the trial court's discretion. See Wages, 915 F.2d at 1235.

The Court denies the request for sanctions. As already discussed, Plaintiff's amendments complied with the Court's order, for the most part, by limiting the complaint to allegations following his termination. Plaintiff conceded an error that had retained one sentence of excluded allegations. This conduct falls well short of that described in cases like Wages. Therefore, the Court concludes that Plaintiff did not

multiply the proceedings "unreasonably and vexatiously," and Defendants are not entitled to section 1927 sanctions.

The Court also has inherent power to impose sanctions for behavior including bad faith conduct or willful violations of its orders. See Chambers v. NASCO, Inc., 501 U.S. 32, 42-51 (1991); Roadway Express, Inc. v. Piper, 447 U.S. 752, 764-67 (1980). For substantially the same reasons, the Court declines to exercise its inherent power to impose sanctions.

## Conclusion

The Court GRANTS IN PART Defendant's motion to the extent that the Court strikes the first sentence of paragraph 52 from the FAC, as agreed by Plaintiff. The Court DENIES IN PART Defendants' motion in all other respects. The Court grants 30 days from the date of this order for Defendants to file an answer to the FAC.

IT IS SO ORDERED.

DATED: May 6, 2008

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

COPIES TO:
All parties of record.